MICHAEL BLAISING *v.* KAY LYNN MILLS

[No. 3-1175A251. Filed April 12, 1978.]

*Charles R. LeMaster*, of Fort Wayne, for appellant.

*John S. Knight, Peters & Terrill*, of Fort Wayne, for appellee.

HOFFMAN, J.—Plaintiff-appellee Kay Lynn Mills (Mills) brought this action to recover real estate, certain personal property and damages from defendant-appellant L. Michael Blaising (Blaising), Mills' ex-husband. The real estate, located at 1630 Short Street, Fort Wayne, Indiana, and personal property, including a 1963 Thunderbird automobile, had been awarded to her in a May 18, 1972, divorce decree. In her complaint, Mills alleged that during the divorce proceedings and for a period of time thereafter she was under a physician's care for psychological and emotional distress and that, while she was in a weakened emotional and mental state, Blaising fraudulently represented that a reconciliation between the parties was imminent. She further alleged that, acting in reliance upon Blaising's promises of reconciliation and without the advice of counsel, she reconveyed to Blaising the subject real estate on July 26, 1972, relinquished ownership of personal property, including the 1963 Thunderbird, and paid one-half of Blaising's debt to the J.C. Penney Company. Additionally, Mills alleged Blaising failed to reconcile with her and stated he had never earnestly contemplated such a reconciliation. Accordingly, Mills

sought a return of legal title to the real estate, the reasonable rental value of the real estate during Blaising's wrongful possession, a judgment in the amount Mills paid to the J.C. Penney Company on Blaising's account, and the return of the personal property or a judgment for its value.

In his answer, Blaising denied the allegations asserting, in addition, that the conveyance of the real estate was voluntarily made by Mills at her request after she disclaimed any desire for the assistance of counsel and that the conveyance was fully supported by consideration, consisting of an agreement whereby Mills would live on the property and tender the mortgage payments when due to Blaising. Blaising further asserted that Mills conveyed the 1963 Thunderbird to an automobile dealer as a trade-in on a 1966 Thunderbird and that Blaising merely acted as an accommodation party in the financing of the latter.

Following trial to the court, the court entered special findings of fact and conclusions of law at Blaising's request. The trial court found that between December of 1971 and January of 1973, Mills was suffering from emotional distress and personality disorders which resulted in substantial dependence upon Blaising. During that period of time Mills' demeanor and actions were compelled and controlled by her love for Blaising, her fear of him and her psychological need for his attention. The court found that Blaising knew of Mills' psychological condition, that she was dependent upon him and that she would respond favorably to nearly all demands he placed upon her. During this period Blaising made representations to Mills by word and action that there would be a marital reconciliation between the parties and a restoration of the marital home. The court found that Mills relied upon the representations and was induced to reconvey to Blaising the real estate located at 1630 Short Street, to surrender control of the 1963 Thunderbird and to pay $300 toward Blaising's obligation to the J.C. Penney Company. The trial court entered judgment against Blaising, ordered him to reconvey to Mills the real estate at 1630 Short Street and awarded Mills damages in the sum of $5,500.

Following the denial of his motion to correct errors, Blaising perfected this appeal.

Blaising first contends that the judgment is contrary to law because actionable fraud cannot be predicated upon a promise to do a thing in the future.

Fraud may be actual or constructive; actual fraud is intentional deception. The presence or absence of the intent to deceive distinguishes actual from constructive fraud. *Coffey et al. v. Wininger et ux.* (1973), 156 Ind. App. 233, 296 N.E.2d 154 (transfer denied). The essential elements of actual fraud are a material representation of past or existing facts, which representations are false, made with knowledge or reckless ignorance of this falsity, which cause a reliance upon these representations, to the detriment of the person so relying. *Gonderman v. State Exchange Bank, Roann* (1975), 166 Ind. App. 181, 334 N.E.2d 724; *Grissom v. Moran* (1972), 154 Ind. App. 419, 290 N.E.2d 119, rehearing denied 292 N.E.2d 627 (transfer denied).

Blaising correctly argues that actual fraud cannot be predicated upon promises of future performance. Indeed, in Indiana the representations upon which an action for fraud can be maintained must be representations of alleged *existing* facts and not promises to be performed in the future. *Sachs v. Blewett* (1933), 206 Ind. 151, 185 N.E. 856; *Wellington v. Wellington* (1973), 158 Ind. App. 649, 304 N.E.2d 347; *Martin et ux. v. Grutka* (1972), 151 Ind. App. 167, 278 N.E.2d 586; *Middlekamp v. Hanewich* (1970), 147 Ind. App. 561, 263 N.E.2d 189.

In this case the trial court found that Blaising represented to Mills that their marriage would be reconciled and that, in reliance thereupon, Mills was induced to reconvey to Blaising the real estate at 1630 Short Street, to surrender ownership of the 1963 Thunderbird automobile, and to pay $300 on Blaising's behalf to the J.C. Penney Company. Since Blaising's alleged representation about the marital reconciliation was a promise to be performed in the future, the judgment of the trial court cannot be sustained on the theory of actual fraud. *Sachs v. Blewett, supra*; *Wellington v. Wellington, supra*.

The judgment, however, can be sustained on the theory of constructive fraud. Constructive fraud has been defined as:

" 'a breach of legal or equitable duty which, irrespective of the

moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests.' "

*Coffey et al. v. Winninger, et ux., supra,* 156 Ind. App. at 239-240, 296 N.E.2d at 159; *Brown v. Brown* (1956), 235 Ind. 563, 135 N.E.2d 614. Such acts or breaches of duty sufficient to constitute constructive fraud "may include mistake, *undue influence,* or duress." *Brown v. Brown, supra,* 235 Ind. at 568, 135 N.E.2d at 616 (emphasis added).

Undue influence, sufficient to invalidate a deed, was defined in *Folsom v. Buttolph* (1924), 82 Ind. App. 283, 295, 297, 143 N.E. 258, 262:

"Undue influence may be defined to be the exercise of sufficient control over the person, the validity of whose act is brought in question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised.

\* \* \* \* \*

" 'Undue influence exists when, through weakness, ignorance, dependence, or implicit reliance of one on the good faith of another, the latter obtains an ascendency which prevents the former from exercising an unbiased judgment. . . .' "

*See also: Hunter v. Milhous* (1973), 159 Ind. App. 105, 305 N.E.2d 448, 459-460; *Baker et al. v. Whittaker et al.* (1962), 133 Ind. App. 347, 182 N.E.2d 442; *Norman v. Norman* (1960), 131 Ind. App. 67, 169 N.E.2d 414.

In *Folsom,* the court stated:

" '. . . As bearing on the question of undue influence, the relationship of parties to each other, the mental condition of the person whose act is in question, and the character of the transaction, should be taken into consideration. If the relation of confidence and trust between the parties to the transaction exists; if the mind of the one nominally acting is weak and susceptible, and if the transaction results beneficially to the person charged, and detrimentally to the person in whose name the act was done, a presumption of undue influence is raised, and the burden is placed on the one claiming the benefit of the transaction to prove that the act was voluntary and no unfairness was used. Indeed, the presence of the relation of confidence and trust alone is generally sufficient to raise a presumption of undue influence. . . .' "

*Folsom v. Buttolph, supra*, 82 Ind. App. at 296-297, 143 N.E. at 262.

In *Hunter v. Milhous, supra*, the court held:

"The relationship necessary to create the presumption of undue influence exists when confidence is reposed on one side and accepted on the other. This fiduciary relationship need not be a legal one; it may be moral, social, domestic or personal. *McCord v. Bright* (1909), 44 Ind. App. 275, 87 N.E. 654."

A confidential relationship exists between a man and a woman contemplating marriage in the immediate future. *See: Johnston v. Johnston, Executor, et al.* (1962), 134 Ind. App. 351, 184 N.E.2d 651. The same sort of confidential relationship exists between a man and a woman, separated or recently divorced, who are contemplating a marital reconciliation. When such a confidential relationship is accompanied by facts and circumstances from which undue influence may be fairly inferred, a presumption of undue influence is created. *Johnston v. Johnston, supra.*

In the case at bar, the trial court's special findings of fact create the presumption of undue influence. The court found that Mills, in reliance upon Blaising's representations of a marital reconciliation, contemplated a reconciliation and restoration of the marital home. The court also found the following evidence of Blaising's exertion of undue influence to induce Mills to reconvey the property at 1630 Short Street, to surrender control of the 1963 Thunderbird, and to pay his debt of $300 to the J.C. Penney Company:

"5. That between December of 1971 through and including January of 1973, Plaintiff was affected by emotional distress and the personality disorders which resulted in a substantial dependence upon and allegiance to the Defendant.

"6. That during said course of time Plaintiff did believe she loved the Defendant; Plaintiff did reasonably fear the Defendant; and Plaintiff's demeanor and actions were compelled and controlled by her love for the Defendant, her fear of the Defendant, and her subconscious psychological need for the Defendant's attention and presence.

"7. That during said course of time the Defendant was aware of the psychological condition and emotional distress of the Plaintiff, that Defendant was aware of Plaintiff's love for and fear of him, that Defendant knew of Plaintiff's dependence upon him and

her need to gain and retain his attention, and that Defendant knew that Plaintiff would respond favorably to nearly any and all requests or demands Defendant placed upon Plaintiff."

Blaising contends that the court's special findings of fact and conclusions of law are not supported by the evidence. When reviewing the evidence to determine if the trial court's special findings of fact are supported by the evidence, this Court may not weigh the evidence or judge the credibility of the witnesses. *Pioneer L. & S. Co. v. First-Merchants Nat. Bk., etc.* (1976), 169 Ind. App. 406, 349 N.E.2d 219 (transfer denied). We look to the evidence most favorable to the appellee to determine if there is substantial evidence of probative value or reasonable inferences therefrom to sustain the decision of the trial court. We will reverse that decision only if the evidence and reasonable inferences are undisputed and could only lead to a decision contrary to that of the trier of fact. *Palmer v. Decker* (1970), 253 Ind. 593, 255 N.E.2d 797; *In Re Estate of Barnett* (1974), 159 Ind. App. 491, 307 N.E.2d 490.

In the present case, the evidence sustains the trial court's conclusion that Blaising exerted undue influence to deprive Mills of her property. During the period between December 1971 and January 1973, Mills suffered depression and personality disorders as a result of her separation and divorce from Blaising, and she was under the treatment of a psychiatrist. Dr. Ronald Pancner, Mills' psychiatrist, characterized her behavior as impulsive, dependent and irresponsible. Dr. Pancner testified that, in order to achieve a reconciliation of her relationship with Blaising, Mills would have been inclined to sign over her property to Blaising. After the divorce, Mills continued to see Blaising whenever he asked. She told him she would do whatever he asked in order to effect a reconciliation. Blaising admitted that Mills always came to him with her problems and that she frequently did what he told her. When Mills and Blaising were in his attorney's office to execute the deed reconveying the Short Street real estate to Blaising, Mills was crying and upset. Blaising admitted that he obtained $300 from Mills to pay on his account at the J. C. Penney Company. The evidence of whether the trade-in of Mills' 1963 Thunderbird and the sale of her newly acquired 1966 Thunderbird were voluntary transactions or were unduly influenced by Blaising is in conflict. The trial court resolved

this conflict agianst Blaising. This Court cannot reweigh that evidence. *Palmer v. Decker, supra.* Hence, the evidence most favorable to Mills sustains the finding that Blaising obtained Mills' property through the exertion of undue influence and constructive fraud.

Blaising next contends that the award of damages to Mills is excessive. The trial court awarded Mills compensatory damages in the amount of $5,500 for her loss of the 1963 Thunderbird, for her loss of the reasonable rental value of the real estate at 1630 Short Street during the time in which Blaising wrongfully held title[1] and for reimbursement to Mills of the sum of $300 she paid on Blaising's charge account at the J.C. Penney Company.[2]

Blaising asserts that the trial court erred in awarding damages for the rent collected from the real estate at 1630 Short Street after Mills reconveyed that property to him.

In *Grissom v. Moran, supra,* 154 Ind. App. at 430-431, 290 N.E.2d at 125, the court stated:

"Generally, a party bringing an action for fraud has an election between two remedies: he may affirm the contract, retain any benefits received and seek damages; or, he can rescind the contract, return any benefits received and be returned to the status quo. *Sickels v. Aetna Securities Co.* (1942), 220 Ind. 347, 41 N.E.2d 947; *Prudential Ins. Co. of America v. Smith* (1952), 231 Ind. 403, 108 N.E.2d 61; *Johnson v. Culver* (1888), 116 Ind. 278, 19 N.E. 129; *Bailey v. London Guarantee & Accident Co.* (1918), 72 Ind. App. 84, 121 N.E. 128; *Ohlwine v. Pfaffman* (1913), 52 Ind. App. 357, 100 N.E. 777. If he elects to rescind the contract, he may not recover damages. He is only entitled to return to the status quo, which usually necessitates a refund of any moneys paid under the contract plus reimbursement for any reasonable expenditures incurred as a proximate result of the fraudulent conduct." *Sickels v. Aetna Securities Co., supra.*"

In the instant action for fraud, Mills sought and was awarded the

---

1. The trial court found the market value of the 1963 Thunderbird to be $545. The court found the reasonable rental value of the property to be $150 per month from January 1973 to December 1974, inclusive, and $175 per month from January 1975 to June 19, 1975, the date of the judgment. Blaising does not dispute these findings.

2. Blaising does not challenge the validity of this $300 damage award.

return of the property and damages for rents collected by Blaising. Blaising argues that the judgment for the rent does not return the parties to the status quo but rather puts Mills in a more favorable position.

When a party elects to rescind the contract, a return of the parties to the status quo usually requires the party in possession to return the property received under the contract and a reasonable rental value for the use of the property, plus damages for waste if any. *Grissom v. Moran, supra,* on rehearing, 154 Ind. App. at 435, 292 N.E.2d at 629. Likewise, the rescinding party must restore any money paid by the party in possession under the contract, plus interest and must make monetary reimbursement for reasonable repairs, expenditures and improvements made on the property by the party in possession. *Id.*

Blaising's argument that the rental income cannot be awarded to Mills is without merit. Restoration of the status quo requires the trial court to consider the rental income collected by the party in possession of the property. *Goff v. Graham* (1974), 159 Ind. App. 324, 306 N.E.2d 758, 767. Hence, in restoring the parties to the status quo, the trial court properly considered the rental income on the property collected by Blaising. However, restoration of the status quo also requires a consideration of the benefits derived by the vendor under the contract. *Goff v. Graham, supra.*

Mills clearly established her right to cancellation of the warranty deed. Once the right to rescind a contract or to cancel a deed was established, the burden then shifted to Blaising to prove with specificity the various equities necessary to return both parties to the status quo, particularly those which would offset the amounts he was required to restore to Mills. *Grissom v. Moran, supra,* on rehearing, 154 Ind. App. at 435, 292 N.E.2d at 629. On the basis of the evidence presented by both parties, the trial court must adjust the equities and attempt to return the parties to the status quo. If, as in this case, the trial court has failed to make specific findings of fact detailing his computations in returning the parties to status quo, the judgment may only be reversed upon a showing of abuse of discretion. *Id.*, 154 Ind. App. at 436, 292 N.E.2d at 629.

Blaising introduced unrefuted evidence that he paid all but one mort-

gage payment on the real estate at 1630 Short Street from August 1972 through the date of the trial. The record reveals that Mills paid the payment for September 1972, in the amount of $111.30. During the time Blaising was in possession of the property, he paid a total of $3,683.48 in mortgage payments. The trial court's special findings of fact ignore Blaising's mortgage payments, and the judgment does not include consideration of the benefit received by Mills by such payments. Blaising has a right as a matter of law to set-off the amount of his mortgage payments against the rental income he must return to Mills. *Smeekens v. Bertrand* (1974), 262 Ind. 50, 311 N.E.2d 431, 436. The trial court's failure to set-off that amount results in an unjust enrichment for Mills. *Id.* Therefore, the trial court abused its discretion in failing to consider all the relevant factors necessary to return the parties to the status quo. Blaising is entitled to a set-off of the $3,683.48 he paid as mortgage payments against the $5,500 damage award, leaving Mills with a judgment in the amount of $1,816.52. *Grissom v. Moran, supra.*

Blaising also asserts that he is entitled to a set-off for the value of improvements and repairs he made to the property while he held title and for four payments he made on the 1966 Thunderbird. He has, however, failed to satisfy his burden to introduce evidence establishing the value of those improvements, repairs and car payments. Moreover, the value of the 1963 Thunderbird before Blaising traded it in was established to be $545. In returning the parties to the status quo, the trial court properly valued Mills' loss of the 1963 Thunderbird at $545.

The judgment of the trial court restoring title to the property at 1630 Short Street to Mills is affirmed. However, the damage award of $5,500 is reversed and the cause is remanded to the trial court with instructions to set-off the $5,500 judgment by the amount of $3,683.48.

Judgment affirmed in part, reversed in part, and remanded with instructions for further proceedings not inconsistent with this opinion.

Staton, J. concurs.

Buchanan, C.J., participating by designation, concurs.

NOTE—Reported at 374 N.E.2d 1166.