**Emily BEDREE and Mary Bedree, Appellants (Defendants Below),**

v.

**Virginia BEDREE, Appellee (Plaintiff Below).**

**No. 02A03–8801–CV–00029.**

Court of Appeals of Indiana, Third District.

Sept. 27, 1988.
Rehearing Denied Nov. 2, 1988.

William F. McNagny, Charles W. McNagny, Joseph G. Bonahoom, Barrett & McNagny, Fort Wayne, for appellants.

Ivan A. Lebamoff, Lebamoff Law Offices, Fort Wayne, for appellee.

STATON, Judge.

Emily Bedree and Mary Bedree appeal the trial court's judgment setting aside the conveyance of certain real estate. They raise five issues for our review. Restated, they are:

1. Whether the trial court erred in finding that James C. Bedree [1] exerted undue influence over his wife Virginia Bedree, forcing her to join him in transferring their joint property to his sisters, Emily and Mary Bedree.

2. Whether the trial court erred in setting aside the transfer.

3. Whether the equitable doctrine "he who seeks equity must do equity" is applicable here.

4. Whether the trial court erred in cancelling certain notes alleged to be the basis and consideration for the real estate transfer.

5. Whether the trial court erred in awarding Virginia $3,500 in damages.

Affirmed.

On February 7, 1984, a deed transferring the marital home of James and Virginia—property worth approximately $50,000—from James and Virginia to Emily and Mary, was recorded in the real estate records of Allen County, Indiana. Mary and Emily claim the deed was signed on the date shown on the deed, February 26, 1981. They also claim the transfer was made in order to discharge James's debts on certain promissory notes made payable to Emily. Further, they claim that three promissory notes were cancelled as a result of the transfer: one executed in 1955 for $1,500; a second executed in 1959 for $4,500; and a third executed in 1976 for $14,500. James had never paid any interest or principal on the notes.

---

1. James C. Bedree was also a defendant below but he did not join in this appeal.

Virginia testified that the deed was not signed in 1981; rather, she stated it was signed in late 1983 or early 1984. According to Virginia's testimony, the deed was back-dated two years in order to prevent a judgment creditor from successfully collecting a debt from James. She said James forced her to sign the deed and threatened to kill her if she refused. He promised to have the property deeded back to them within six months to one year. However, this was never done.

Hence, while divorce proceedings were pending in another court, Virginia filed this action seeking cancellation of the deed and damages.

## I.

### Undue Influence

The trial court made the following pertinent special Findings of Fact and Conclusions of Law:

2. During [the marriage of James and Virginia], James C. Bedree dominated relations of the family and exercised total control over all family, financial and business matters, to the exclusion of any influence of the Plaintiff.

3. At all times pertinent, James C. Bedree actively engaged in a course of conduct both obdurate and remarkable for its undue influence, dishonesty and deceit of and towards [sic] Plaintiff, the marital property, and more particularly the above-described real estate in which Defendants James C. Bedree, Emily Bedree and Mary Bedree were from time to time complicit.

4. The Plaintiff has sustained her complaint....

6. The conveyance of the described real estate is set aside; title is found and ordered held in the entireties pursuant to the original grant to Virginia Bedree and James C. Bedree....

■ In essence, Emily and Mary contend that the trial court erred in finding that James exerted undue influence over Virgi-

nia.[2] However, when reviewing the evidence to determine if the trial court's special findings of fact are supported by the evidence, this Court may not weigh the evidence or judge the credibility of the witnesses. *Blaising v. Mills* (1978), 176 Ind. App. 141, 374 N.E.2d 1166, 1171. We look to the evidence most favorable to the appellee to determine if there is substantial evidence of probative value or reasonable inferences therefrom to sustain the decision of the trial court. We will reverse that decision only if the evidence and reasonable inferences are undisputed and could only lead to a decision contrary to that of the trier of fact. *Id.*

■ Undue influence, sufficient to invalidate a deed, was defined in *Folsom v. Buttolph* (1924), 82 Ind.App. 283, 143 N.E. 258, 262, *trans. denied:*

"Undue influence may be defined to be the exercise of sufficient control over the person, the validity of whose act is brought in question, to destroy his free agency and constrain him to do what he could not have done if such control had not been exercised.

\* \* \* \* \* \*

" 'Undue influence exists when, through weakness, ignorance, dependence, or implicit reliance of one on the good faith of another, the latter obtains an ascendency which prevents the former from exercising an unbiased judgment. ...' "

*See also Blaising, supra,* 374 N.E.2d at 1169–70.

Here, the evidence sustains the trial court's conclusion that James exerted undue influence over Virginia. In addition to Virginia's testimony, cited above, one of the couple's sons testified that James was a dominant force in the household creating fear in Virginia and in the whole family. Virginia also testified that the deed had been notarized prior to her signature by a long-time friend of Emily's, and no one else was present in the room when James threatened her.

---

**2.** In their brief, Emily and Mary argue that there was consideration for the deed and, if not, lack of consideration would not bar the trans-

fer. These arguments would become relevant in the event we found the trial court had erred in its finding regarding undue influence.

Further, evidence presented at trial showed that the property was worth far more than the notes; that James and Virginia continued to live on the property, but paid no rent to the sisters; that while James allegedly had to borrow from his sisters to get by, at the time he allegedly borrowed the money he had more than $290,000 deposited in various out-of-state banks; and that judgment for $3,200 was rendered against James in December 1983 and the deed was recorded in February 1984.

## II.

### *Setting Aside Transfer*

■ Emily and Mary contend the trial court erred in finding that they were "from time to time complicit" in the actions of James and, thus, erred in setting aside the transfer.

However:

"A deed procured by undue influence is voidable regardless of whether the undue influence was exerted by the grantee or someone else."

*Reynolds v. Molitor* (1981), 184 Conn. 526, 440 A.2d 192, 194; 23 Am.Jur.2d *Deeds* § 210, p. 219 (1983). The undue influence destroys the intent legally required to execute the deed. *See Blaising, supra,* 374 N.E.2d at 1170 ("undue influence destroys [the grantor's] free agency ...").[3]

We note that a deed procured by undue influence is *voidable* rather than void; thus, if, before the grantor takes steps to avoid the deed, the grantee therein conveys the premises to an innocent purchaser, a court of equity will extend protection to such a purchaser. *Colorado Coal & Iron Co. v. U.S.* (1887), 123 U.S. 307, 8 S.Ct. 131, 134, 31 L.Ed. 182. However, while an innocent purchaser is protected by equity, the *initial* grantee is not. Therefore, as initial grantees, Emily and Mary cannot claim protection.

## III.

### *Equity*

Emily and Mary contend Virginia is precluded from equitable relief for the reason that "he who seeks equity, must do equity," citing *Sicanoff v. Miller* (1960), 131 Ind.App. 535, 167 N.E.2d 481, *trans. denied.* Their rationale is that Virginia perpetrated a fraud when she signed the deed. However, this presumes Virginia had a choice in the matter. Because we find James did in fact exert undue influence over Virginia, forcing her to sign the deed, this argument is meritless.

## IV.

### *Cancellation of Notes*

■ Emily and Mary contend the trial court erred in cancelling the aforementioned promissory notes which they allege to have been the basis and consideration for the real estate transfer. However, they have cited no case or rule which precluded the court from cancelling the notes in light of the circumstances as well as judicial economy. Therefore, they have waived this argument. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

The evidence showed that Emily prepared the deed in question; that she prepared tax documents for James during several of the years in question and, thus, was likely aware of his holdings in various banks; that the notary was her long-time friend and housemate; and that she and Virginia did not get along. In light of these facts and the other facts we have cited throughout this opinion, we cannot dispute the trial court's finding that Emily and Mary joined in the fraudulent actions of James and that the notes were nothing more than shams.

## V.

### *Damages*

Emily and Mary contend the trial court erred in ruling as follows:

---

3. It should be noted that Indiana courts have long held that a will may be invalidated because of undue influence even where the beneficiary had no involvement in the wrongful acts. *See Workman v. Workman* (1943), 113 Ind.App. 245, 46 N.E.2d 718, 728, *trans. denied.*

Damages of $3,500.00 are awarded to Plaintiff and against Defendants and each of them.

The trial court did not specify upon what basis it made the damage award, but in its Finding of Fact No. 4, the court stated:

The Plaintiff ... is entitled to the relief sought in her prayer [for relief] ..., *excepting item three (3)*.... (Emphasis added.)

Item 3 was a request that Virginia be awarded an appropriate sum for the reasonable rental value of the property.[4] Other than an award for the reasonable rental value of the property, the only other logical pecuniary relief here would be punitive damages or costs. Virginia requested both in her prayer for relief.

 We have a duty to sustain the action of the trial court if it can be done on any legal ground. *Hurst v. Bd. of Comm'rs of County of Pulaski* (1985), Ind., 476 N.E.2d 832, 834. In a constructive fraud action, punitive damages may be awarded if oppressive conduct is demonstrated. *Brown v. Woolf* (S.D.Ind.1983), 554 F.Supp. 1206, 1208. *See also Ind. & Mich. Elec. Co. v. Harlan* (1987), Ind.App., 504 N.E.2d 301, 307, *trans. denied* (punitive damages may be awarded for fraud.) Thus, we will affirm the damage award.

The judgment of the trial court is in all things affirmed.

CONOVER, P.J., concurs.

HOFFMAN, J., concurs in result and dissents with opinion.

HOFFMAN, Judge, concurring in result and dissenting.

I concur in result except as to paragraph "V. Damages" to which I dissent.

The court was required to make special findings of· fact and conclusions of law pursuant to the request of Emily Bedree and Mary Bedree.

At the appellate level of review, these findings and conclusions bind the court. It cannot look to the record to inhance the findings.

The findings of the trial court do not contain any facts which could sustain a money judgment. No facts show any injury or any amount of damages. No facts demonstrate clear and convincing evidence to support a punitive damage award and the court did not find that punitive damages would be proper.

The award of damages should be reversed.

---

**4.** There was no evidence Emily and Mary ever took possession of the property or collected rent. There was evidence that James and Virginia remained in the home after the deed was recorded.