Kristen S. SAUZER–JOHNSEN, Respondent–Appellant,

v.

Frank J. SAUZER, Jr., Petitioner–Appellee.

No. 64A03–8808–CV–262.

Court of Appeals of Indiana, Third District.

Oct. 12, 1989.

Kenneth D. Reed, Abrahamson, Reed, Adley & Enslen, Hammond, for respondent-appellant.

Max Cohen, Cohen and Thiros, Peter L. Benjamin, Merrillville, for petitioner-appellee.

GARRARD, Presiding Judge.

This case is an appeal from the order of the Commissioner of the Porter County Superior Court setting aside the property settlement agreement executed by Frank J. Sauzer, Jr., appellee-petitioner (hereinafter Frank) and Kristen S. Sauzer–Johnsen, appellant (hereinafter Kristen).

Kristen asks us to decide three issues:

1. Whether the trial court's order setting aside the property settlement agreement was a final, appealable order.

2. Whether the trial court erred in admitting polygraph examinations into evidence.

3. Whether the commissioner had proper jurisdiction and authority to preside over the trial below.

We affirm the order of the Porter County Superior Court.

## FACTS

Frank and Kristen were married on November 29, 1969. Their marriage began to deteriorate in 1981. Kristen began seeing

Bernard Johnsen, a police officer and self-described karate expert. She invited Johnsen to the couple's residence on numerous occasions. On one occasion, Johnsen allegedly performed a karate demonstration on Frank by knocking a knife from Frank's hand and told him, "Blink and you will die in the dark." Despite Frank's protest, Kristen again invited Johnsen to their residence in September, 1982. On this occasion Johnsen allegedly threatened to kill Frank if he did not give Kristen what she wanted in the property settlement. Johnsen told Frank he carried a "drop gun" that he could use in the event he killed someone without justification. Kristen told Frank that Johnsen was her "muscle," her "pet cop" who would "get him" if Frank did not give her all the property she demanded.

In May, 1983, Kristen allegedly ordered Frank to use attorney Nick Anast to file the dissolution papers and threatened that Johnsen would "get him" if Frank didn't comply. Frank had never retained Anast before that time. Anast arrived at Frank's place of business with dissolution papers prepared for his signature. No discovery or appraisals were used. The threats to Frank continued after the dissolution papers were filed. In August, 1983, Kristen presented a typewritten document purporting to be a property settlement agreement to Frank and "ordered" him to copy it into his own handwriting, to make it appear that the document was Frank's idea.

On October 11, 1983, a final dissolution hearing was held and the custody, support and property settlement agreement was incorporated into the dissolution decree. The property settlement agreement provided that Frank would pay Kristen $33,000 per year, tax-free, for the remainder of her life; $70,000 by August, 1984; and $300,000 by October, 1985. Frank contends that the present value of the property to be given Kristen was $721,500 at an 8% discount rate, and that his net worth on May 18, 1983, was $473,962 (Appellee's Brief, pp. 18-19).

The threats allegedly continued after the decree. On March 13, 1985, Kristen sought to enforce the decree by petition for citation and asserted *inter alia* that Frank was in arrears $2,842.34 in child support. On March 18, 1985, Frank filed a petition for relief from judgment, alleging that he had been coerced into entering into the property settlement agreement, that it was impossible to perform his part of the agreement, and that the terms of the agreement were so unconscionable and grossly inequitable as to render Frank's performance impossible and manifestly unfair. Kristen moved to dismiss on the ground that Frank's motion was barred by the one-year limitation of TR 60(B). The trial court denied her motion, holding that allegations of undue influence, coercion and duress come within the purview of IC 31-1-11.5-17(a). On May 27, 1988, after a bench trial before the Porter County Court Commissioner, the court entered an order setting aside the property settlement agreement as the product of an involuntary and non-free will act of Frank Sauzer. Kristen's motion to correct errors was denied.

## DISCUSSION

### I.

Whether the trial court's order setting aside the property settlement agreement was a final judgment from which an appeal can be taken.

Frank contends that the order setting aside the property settlement agreement was an interlocutory order, requiring trial court certification pursuant to Appellate Rule 4(B)(6) in order to appeal. He contends that the petition to revoke the property disposition sufficiently alleged fraud so as to come within the exception to IC 31-1-11.5-17, amended by Acts 1987, P.L. 289, § 1, which states:

"The orders as to property disposition ... may not be revoked or modified, *except in the case of fraud* which ground shall be asserted within two (2) years of said order." (emphasis added)

IC 31-1-11.5-17(a). Such an order would not be a final order. A final order or judgment:

... must be one which finally determines the rights of the parties involved; or if it does not, it is still appealable if it disposes of a distinct and definite branch of the proceedings, leaving no further question for future determination by the Court as to that particular issue. [citation omitted].

*Geib v. Estate of Geib* (1979), 182 Ind.App. 377, 378–79, 395 N.E.2d 336, 337. The trial court's order would ordinarily not be final because it did not redistribute the property. *See Marianos v. Marianos* (1982), Ind. App., 431 N.E.2d 530; *Soil v. Soil* (1936), 102 Ind.App. 112, 1 N.E.2d 311. Because it has not been certified for appeal by the trial court, this court could dismiss the appeal.[1]

Kristen contends the order was final because Frank's petition did not allege fraud. If Frank did not allege fraud sufficiently to put his petition within the scope of IC 31–1–11.5–17(a), his petition to set aside the property settlement was a motion for relief from judgment under TR 60(B)(3). A ruling denying or granting a motion under TR 60(B) is a final appealable order. TR 60(C).

■ Resolution of this question depends upon our resolving the question of whether Frank's petition alleging that he was coerced into agreeing to the property disposition also sufficiently alleges fraud for purposes of IC 31–1–11.5–17(a).

Count I of Frank's petition for relief from judgment alleged in pertinent part:

5. That the Petitioner ... was coerced and threatened into executing said 'Custody, Support and Property Settlement Agreement' and consequently did not execute said document of his own free will or volition.

\* \* \* \* \* \*

7. That on numerous occasions during the separation of the parties hereto and immediately prior to the execution of said 'Agreements' and entry of the Dissolution Decree, Petitioner was threatened and placed in fear of serious bodily harm and in fear for his life by one Bernie Johnsen, Respondent Kristen Sauzer's present husband, [a police officer] ... who is accomplished in the art and practice of karate and has a history of violence, all of which has been known to Petitioner at all times relevant hereto, which threats he believed would be carried out if he did not execute said Agreements....

8. That Petitioner was further threatened and placed in fear for his life, and physical safety by Respondent, Kristen Sauzer, during the parties' separation and immediately prior to their dissolution of marriage and execution of [the agreements]....

9. ... [T]hat as a result of said threats, the Petitioner was coerced into executing the Custody, Support, and Property Settlement Agreement....

10. That said acts of coercion and duress on the part of Bernie Johnsen and Kristen Sauzer have continued through the present time and Petitioner has, up until this present time, been placed under extreme duress by said persons not to contest or in any way attempt to alter, modify or set aside said Custody, Support and Property Settlement Agreement and the attendant Dissolution Decree and Consultant Agreement.

Transcript, Vol. I, pp. 29–32. Kristen moved to dismiss this petition on the grounds that it was barred by the one year limitation. The trial court denied her motion.

Frank did not plead actual fraud. To plead actual fraud, the plaintiff must show that the defendant made a material representation of past or existing fact, that the representation was false and was made with knowledge or in reckless ignorance of its falsity, and that the plaintiff detrimentally relied on the statement. *Blaising v. Mills* (1978), 176 Ind.App. 141, 145, 374 N.E.2d 1166, 1169. Actual fraud cannot be predicated on promises of future performance. *Id.* Threats of bodily harm are nec-

---

1. Moreover, Frank's petition would be timely filed. A petition filed pursuant to IC 31–1–11.5–17(a) within two years of the order is timely filed, TR 60(B) notwithstanding. *Pactor v. Pactor* (1979), 181 Ind.App. 329, 333–34, 391 N.E.2d 1148, 1151.

essarily promises of future conduct and, even if relied on, are not fraudulent.

■ "Constructive fraud is fraud that arises by operation of law from conduct which, if sanctioned by law, would secure an unconscionable advantage." *Whiteco Properties, Inc. v. Thielbar* (1984), Ind. App., 467 N.E.2d 433, 437; *Blaising v. Mills, supra,* 374 N.E.2d at 1169. A line of Indiana cases stands for the proposition that acts or breach of duty giving rise to constructive fraud may include mistake, undue influence, or duress. *Brown v. Woolf* (N.D.Ind.1983), 554 F.Supp. 1206, 1208; *Brown v. Brown* (1956), 235 Ind. 563, 568, 135 N.E.2d 614, 616; *Bedree v. Bedree* (1988), Ind.App., 528 N.E.2d 1128, 1132; *Blaising v. Mills, supra,* 374 N.E.2d at 1169. Frank does not allege mistake, nor has he alleged undue influence. To create a presumption of undue influence, the plaintiff must allege a relationship of trust and confidence between parties to the transaction, weakness or susceptibility in the mind of one of the parties, benefit to the stronger party, and detriment to the weaker. *Blaising v. Mills, supra,* 374 N.E.2d at 1170. Frank has not alleged all of these elements.

■ Frank has, however, alleged duress. The Indiana decisions previously cited do not help to determine when duress is sufficient to constitute constructive fraud, except to say that it may do so. Duress does not always constitute constructive fraud; we decide here when it does. Facts that lead to the conclusion of constructive fraud include oppressive conduct, *Bedree v. Bedree, supra,* at 1130, relationship of the parties, *Sanders v. Townsend* (1987), Ind. App., 509 N.E.2d 860, 865, and unconscionable result. Frank's allegations that his wife and her police-officer friend, Johnsen, threatened his life to coerce him into signing an agreement to give her the marital property she wanted in an amount that he knew at the time of the agreement exceeded his assets, and that the same threats to life and health continued even after the agreement was executed and partially complied with, show the oppressive conduct of Kristen and her friend, a relationship between the parties and an unconscionable result. Frank has sufficiently alleged constructive fraud.

The trial court's denial of Kristen's motion to dismiss was correct. The petition was within the scope of IC 31–1–11.5–17(a) and the two year statute of limitations. The trial court's order was, therefore, interlocutory and not appealable without certification by the trial court. Nevertheless, we retain jurisdiction pursuant to Appellate Rule 4(E) to pass upon the issue of whether the trial court properly set aside the property dissolution agreement. *See Parrett v. Lebamoff* (1979), 179 Ind.App. 25, 27, 383 N.E.2d 1107, 1109.

## II.

Whether the trial court erred in admitting polygraph examinations into evidence.

■ Kristen contends that it was error to admit her polygraph examinations into evidence, even though their admission was stipulated to because the trial court "suggested" that she submit to polygraph examinations. Polygraph examinations are generally inadmissible absent a valid stipulation between the parties. *Harris v. State* (1985), Ind., 481 N.E.2d 382, 384. Where there is a valid stipulation, the trial court has discretion to admit polygraph results. *Id.* In criminal cases, a stipulation must be in writing and signed by both defendant and prosecutor. *Id.* There is no such requirement in civil cases.

■ At trial, counsel for Frank attempted to introduce into evidence Frank's polygraph results. Counsel for Kristen objected, but later stated, "I'm not going to object to the admission of this unauthenticated document if counsel will stipulate that I may sort of toss our polygraph results into evidence also. I don't want to face an objection." (Tr. p. 516) Counsel for Frank agreed and the parties stipulated to the introduction of polygraph reports into evidence. (Tr. pp. 516–17) Later, when the results of the polygraph examinations were found to be conflicting, counsel for both parties stipulated to having a sin-

gle firm, John Reid and Associates, perform a second set of polygraph examinations. (Tr. pp. 595–96) Implicit in the stipulation was that their earlier stipulation would still be in effect; that is, the results of this second set of examinations would be admitted into evidence without objection. Once the parties stipulate to the admissibility of polygraph evidence, they are estopped from objecting to its admission. *Lyons v. State* (1982), Ind., 431 N.E.2d 78, 80. Valid stipulations to polygraph examinations cannot be withdrawn once one party learns the results are unfavorable. *Holcomb v. State* (1980), 268 Ark. 138, 594 S.W.2d 22, 23; *Pickens v. State* (1980), 96 Wis.2d 549, 292 N.W.2d 601, 613.

Kristen also contends that the trial court improperly suggested that she submit to polygraph examination to resolve issues of credibility. Polygraphs are inherently unreliable. A trial court's "suggestion" that a party submit to one may lead the party to believe that he must submit to the examination to prove his truthfulness. A "suggestion" with that effect would be error. A fair reading of the record reveals, at most, that the trial court inquired only as to Frank and Kristen's willingness to submit to a polygraph examination. The trial court did not suggest that anyone take a polygraph exam to prove her or his credibility. We find no error.

### III.

Whether the commissioner had proper jurisdiction and authority to preside over the trial below.

The dissolution decree incorporating the property settlement decree was entered by Judge Bruce Douglas. After Frank petitioned for relief from judgment or modification, March 18, 1985, Kristen moved to transfer the matter to Commissioner William W. Andersen for hearing. Her motion was granted on March 26, 1985. Frank moved to vacate the March 26, 1985 entry on April 23, 1985. Kristen opposed that motion. Frank also filed objections to Commissioner Andersen's jurisdiction. No order book entry shows a ruling on Frank's motion or objections. The record does show, however, that Kristen sought transfer and actively sought to keep the cause under the commissioner. She did not object at any time during the trial to the commissioner's authority to try the case. She nevertheless contends on appeal that the commissioner had no jurisdiction or authority to try the case.

Lack of subject matter jurisdiction may be raised for the first time on appeal. *Short v. State* (1982), Ind., 443 N.E.2d 298, 309. However, the commissioner heard the case in the Porter County Superior Court, which has subject matter jurisdiction in all civil cases, including marital dissolution. IC 33–5–38–4. Even if he had no authority, the commissioner had subject matter jurisdiction. *Id.* We need not reach the issue of whether the commissioner had the authority to try the case. Kristen raised no objection to the commissioner's authority at trial. Her claim of error cannot be raised for the first time on appeal and is therefore waived. *Id.* at 310.

### *Conclusion*

We find no error in the proceedings and, therefore, affirm the judgment of the trial court.

STATON and CONOVER, JJ., concur.