**Phillip O. SWAIN, Appellant–Defendant,**

v.

**Evelyn SWAIN, Appellee–Plaintiff.**

No. 18A02–9005–CV–00278.[1]

Court of Appeals of Indiana,
Fifth District.

Aug. 19, 1991.

---

**1.** This case has been diverted to this office by order of the Chief Judge.

James J. Jordan, Muncie, for appellant-defendant.

Dale E. Hunt, Dunnuck, Teagle & Hunt, Muncie, for appellee-plaintiff.

SHARPNACK, Judge.

The plaintiff, Evelyn Swain, initiated this action when she filed a two-count complaint in the Delaware Superior Court. In the first count, she sought an order releasing her from a mortgage which she and the defendant Phillip O. Swain had executed in favor of the defendant Merchant's National Bank. In the second count, she alleged that Phillip had fraudulently induced her to execute the mortgage. She settled with the bank and dismissed it from the case. Her complaint against Phillip was tried to the court, which entered a judgment in her favor in the amount of $74,913.96, which was composed of an award of compensatory damages and attorney's fees in the amount of $22,750.00 and punitive damages in the amount of $52,163.96, in addition to interest and costs. Phillip appeals, seeking reversal of this judgment. We affirm in part and reverse in part.

Phillip identifies six issues for review which we consolidate and restate as follows:

1. Is there evidence in the record sufficient to support a finding of constructive fraud?

2. Is there evidence in the record sufficient to support the award of punitive damages and attorney's fees?

The following are the facts most favorable to the judgment of the trial court.[2] Phillip and Evelyn had been married, but they divorced in October of 1979. The dissolution decree provided that Phillip was to pay the mortgage on the real estate which the couple had owned while married. In addition, Phillip was required to execute a quitclaim deed transferring his interest in the property to Evelyn. The decree also provided that Phillip was to pay child support for the couple's son Ryan.

In early 1984, Phillip and Evelyn began a reconciliation. During this reconciliation, Phillip spent much time in Evelyn's home and eventually moved back in with her. He also asked Evelyn to marry him, and she accepted. The couple planned to be married that year.

Once Phillip had moved back in, he began to try to talk Evelyn into helping him get a loan in order to build a pole barn on the property. Evelyn at first resisted these overtures, but Phillip kept telling her that he could use the pole barn to work on automobiles for additional income, and that he would teach Ryan auto mechanics. Evelyn also resisted procuring a mortgage loan because she had a net biweekly income of $312.00, and the monthly payments would be much greater than she could afford on her income. Phillip sought to allay her fears by assuring her that she would not have to pay off the debt with her income because they would be together, and because, even if things between them did not

---

**2.** Our review of this case has been hampered by the failure of both parties to comply with accepted standards of appellate practice in the preparation of the facts sections of their briefs. The facts section of appellant's brief is nothing more than a twenty-one page witness-by-witness recitation of the testimony presented at trial. Our appellate courts have condemned this practice on numerous occasions. *See, Nehi Beverage Co. v. Petri* (1989), Ind.App., 537 N.E.2d 78, 82, *trans. denied; FMC Corp. v. Brown* (1988), Ind. App., 526 N.E.2d 719, 723–724 n. 1, *affirmed,* (1990), 551 N.E.2d 444; *Walters v. Dean* (1986), Ind.App., 497 N.E.2d 247, 249–250; *Lucas v. Frazee* (1984), Ind.App., 471 N.E.2d 1163, 1166 n. 1; *Miller v. State* (1983), Ind.App., 449 N.E.2d 1119, 1120; *Elsperman v. Plump* (1983), Ind. App., 443 N.E.2d 1206, 1206–1207. Given the great weight of this authority, it is inexcusable for counsel at this late date to persist in presenting this court with such witness-by-witness recitations.

The facts section of appellee's brief is not, in any significant degree, better. In part of her brief, appellee presents a series of one sentence "paragraphs" which seem unconnected by any form of logical organization. Her statement of facts is also replete with redundancies. We recommend that counsel for both parties make a better effort to comply with the appellate rules and the decisions of this court in the future.

work out, he would take sole responsibility for paying the debt. Evelyn eventually agreed to let Phillip apply for the loan.

Phillip filled out all of the loan application papers, upon which he stated that he was married, and took care of all the other loan arrangements. After he completed the arrangements, he instructed Evelyn to come to the bank to sign the loan papers. Evelyn came into the bank and initially expressed her reluctance to take out such a large loan. Phillip and the bank officer overseeing the loan assured her that she was signing only because her real estate was to secure the loan, and that Phillip would remain liable for the loan. Evelyn eventually capitulated and signed the loan note and mortgage on May 24, 1984.

The bank completed the loan and, after using some of the money to pay off the mortgage which Phillip had been ordered to pay under the dissolution decree, disbursed approximately $20,500 to Phillip and Evelyn. Phillip used $2,800.45 to pay for his boat and $1,189.37 to pay for a VCR and camcorder. Phillip also persuaded Evelyn to use $1,150.61 to pay off her car payments so that she could buy another car. Evelyn had not planned on buying another car until Phillip persuaded her to do so. Phillip used $15,429.21 of the remaining funds to pay for the pole barn and various other expenses. The structure added approximately $6,000.00 to the value of Evelyn's property.

Phillip and Evelyn then took a vacation in Arizona, where they had intended to remarry. Phillip, however, ceased all talk of marriage and no marriage occurred, although he continued to live with Evelyn after they returned from vacation. In November of 1984, Evelyn told Phillip to get out of her house, because she learned that he had been seeing another woman.

Phillip continued to pay on the loan until 1986. In 1986, he informed Evelyn that he was tired of making payments and that he intended to stop making the payments in March or April of 1987. Sometime in 1987, Phillip started making only half payments, leaving half for Evelyn to pay. Later that year, Phillip ceased making any payments.

This case was tried to the court. Phillip filed a motion requesting that the court make special findings of fact and conclusions of law. The court made forty-three detailed findings of fact and three conclusions of law. When we are asked to review a trial court's entry of special findings of fact, we must make two determinations: we must first determine if the evidence in the record supports the findings, and, if it does, we must determine whether the findings support the trial court's judgment. If we conclude that the record supports the findings and the findings support the judgment, we must affirm the trial court. *De-Kalb County Eastern Community School Dist. v. DeKalb County Eastern Education Association* (1987), Ind.App., 513 N.E.2d 189, 191.

■ Phillip argues that, in order to establish that he had committed a constructive fraud, Evelyn had to prove that he breached a moral or equitable duty which "irrespective of the moral guilt of the fraudfeasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interest." *Blaising v. Mills* (1978), 176 Ind.App. 141, 145–146, 374 N.E.2d 1166, 1169, 99 A.L.R.3d 1238, 1242, (quoting *Coffey v. Wininger* (1973), 156 Ind.App. 233, 239–240, 296 N.E.2d 154, 159; and citing *Brown v. Brown* (1956), 235 Ind. 563, 135 N.E.2d 614). Phillip asserts that only mistake, undue influence, or duress will constitute the type of breach which will give rise to constructive fraud. He argues that there is no evidence that he and Evelyn were in a relationship of trust or confidence because a couple contemplating marriage may not be held to be in such a relationship without some additional facts showing that one party dominated the other. He asserts that the evidence showed Evelyn to be a capable and independent person whom he could not and did not dominate. Thus, he asserts the evidence did not support the trial court's finding of constructive fraud.

The trial court made the following findings of fact:

\* \* \* \* \* \*

10. Defendant repeatedly assured Plaintiff before, at the time of the execution

of the mortgage, and afterwards on a number of occasions and at times in the presence of other persons that he alone would be responsible for the payments on the 1984 note and mortgage.

11. Defendant used the confidential relationship and the relationship of trust which naturally resulted from the reconciliation in progress in the Spring of 1984 and by the indication that he gave to Plaintiff that they would be back together and would remarry to cause Plaintiff to borrow money largely for the Defendant's benefit that she would otherwise never have done.

12. At the time of the execution of the note and mortgage, Plaintiff in the presence of a bank officer indicated that she could not make the payments on the loan and that she did not make that much money and Defendant told her and the bank officer that he would be responsible for making the payments no matter what and that he and Plaintiff would be together, but even if they were not, he would be responsible for those payments.

\* \* \* \* \* \*

33. Plaintiff having entered into a relationship of trust and confidence with Defendant relied to her harm upon his representations that he alone would be responsible for the loan and mortgage from May of 1984.

34. Defendant and Plaintiff entered into a relationship of confidence and Defendant abused that confidential relationship and the reliance the Plaintiff placed upon him and thereby breached his duty to her detriment in a fashion that should not be tolerated.

There is evidence in the record to support these findings and they support the conclusion of the trial court that "defendant's conduct is clearly fraudulent ... it is clearly and overwhelmingly shown to be constructive fraud."

In *Scott v. Bodor, Inc.* (1991), Ind.App., 571 N.E.2d 313, 323–324, this court held that constructive fraud can arise where one party in a confidential relationship takes unconscionable advantage of the other party in the relationship. In *Johnston v. Johnston* (1962), 134 Ind.App. 351, 356–357, 184 N.E.2d 651, 654, the appellate

court recognized that a confidential relationship could exist between two people contemplating marriage. When such a relationship exists and one party uses the relationship to gain an unconscionable advantage over the other, the finder of fact may find a constructive fraud.

In *Blaising*, a case remarkably similar to the one at bar, the plaintiff conveyed some real estate and personal property to the defendant after he made overtures of reconciliation to her following the parties' divorce. After she conveyed the property and paid some of the defendant's debts, he reneged on his promise to reconcile. The trial court granted the plaintiff the requested relief, and the defendant appealed. In affirming the trial court, the court of appeals noted that the determination of whether a confidential relationship existed was one of fact to be made by the trial court, and held that it could not reweigh the evidence. 176 Ind.App. at 148, 374 N.E.2d at 1171, 99 A.L.R.3d at 1244.

Our constructive fraud theories are "premised on the understanding that there are situations which might not amount to actual fraud, but which are so likely to result in injustice that the law will find a fraud...." *Bodor*, 571 N.E.2d at 324. We find Phillip's imposition upon Evelyn to be just such a situation, and we therefore hold that the trial court committed no error in finding a constructive fraud in this case.

■ Phillip argues that the trial court erred in awarding attorney fees and punitive damages. With regard to fees, he argues that litigants in this state are normally held to pay their own fees, and that the courts may award fees only for vexatious or oppressive conduct. *City of East Chicago v. Broomes* (1984), Ind.App., 468 N.E.2d 231; *Cox v. Ubik* (1981), Ind.App., 424 N.E.2d 127. He also argues that punitive damages may be awarded only where the plaintiff has shown oppressive or vexatious conduct. He admits that the evidence shows the breach of an oral agreement, but he argues that there is no evidence that he committed a common law tort or a "serious wrong, tortious in nature...." *Kruszew-*

*ski v. Kwasneski* (1989), Ind.App., 539 N.E.2d 965, 967.

Finally, Phillip argues that Evelyn failed to prove by clear and convincing evidence that he defrauded her and that, as a consequence, she is not entitled to punitive damages. He again suggests that the evidence only supports a breach of contract and further, in an amazing display of chutzpah, actually suggests that Evelyn benefitted from assuming liability for a $24,000.00 loan because the value of her property increased. Not surprisingly, he neglects to mention that the value increase was only $6,000.00.

■ Punitive damages may be awarded in a constructive fraud action if the evidence demonstrates that the defendant engaged in oppressive conduct. *Bedree v. Bedree* (1988), Ind.App., 528 N.E.2d 1128, 1132. Here, the record is replete with evidence of oppressiveness. Phillip took advantage of Evelyn's love and her belief that he would marry her to persuade her to apply for a loan which greatly harmed her and greatly benefitted him. When he had obtained the funds, he abandoned his promise to marry and began to see other women. He stopped paying on the debt which he caused Evelyn to incur knowing that he was exposing her to foreclosure. In short, his conduct was fraudulent and oppressive. There is ample support for the trial court's award of punitive damages.

■ We reach a different conclusion with regard to Evelyn's attorney fees.[3] In order to merit an award of fees, a party must show that the other party has engaged in obdurate behavior in the prosecution of the litigation before the court, not in the commission of the underlying tort. *See, e.g., Baker v. Townsend* (1988), Ind. App., 519 N.E.2d 192, 196; *Cox*, 424 N.E.2d at 130. Here, Evelyn's allegations of oppressiveness all deal with Phillip's conduct in defrauding her, not with his conduct in defending this litigation. There is, therefore, no basis for an award of attorney

fees, and we therefore reverse the trial court's award of fees.

AFFIRMED IN PART, REVERSED IN PART.

MILLER and RUCKER, JJ., concur

---

3. The court awarded Evelyn the sum of $1,800.00 as reasonable attorney fees in this action. The court also awarded her $1,900.00 in actual damages which represents attorneys fees which she was obligated to pay to Merchant's because of the default on the mortgage. Be-

cause this $1,900.00 is a species of actual damage stemming from Phillip's fraud, and not an award to Evelyn of attorney fees which she incurred in prosecuting this action, our reversal of attorney fees does not apply to these damages.