783 N.E.2d 300 (2003)
J.R.T., II, Appellant-Defendant,
v.
STATE of Indiana, Appellee.
No. 49A02-0206-JV-438.
Court of Appeals of Indiana.
February 11, 2003.
*301 Janice E. Smith, Indianapolis, IN, Attorney for Appellant.
Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

OPINION
SULLIVAN, Judge.
J.R.T., II, ("J.R.T."), a juvenile, appeals the trial court's finding that he committed one count of Criminal Mischief, a Class D felony if committed by an adult,[1] one count of Criminal Mischief, a Class A misdemeanor if committed by an adult,[2] and four counts of Criminal Mischief, each Class B misdemeanors if committed by an adult.[3] Upon appeal, J.R.T. presents two issues for our review, whether the evidence was sufficient to support the trial court's adjudication, and whether the trial court erred in refusing to admit into evidence the results of a polygraph examination.
We affirm.
The facts most favorable to the trial court's adjudication indicate that on or about July 30, 2001, J.R.T., along with two other juveniles, B.B. and C.K., drove around random neighborhoods shooting out car windows with a BB gun. J.R.T. was arrested on September 10, 2001, and charged with eleven counts of criminal mischief, crimes of varying degrees if committed by an adult, for shooting out windows on eleven separate vehicles. At an initial hearing on September 18, 2001, J.R.T. denied the allegations. A denial hearing as to the eleven counts of criminal mischief was held on November 26, 2001. At the conclusion of the State's presentation of evidence, J.R.T. moved for counts 2, 4, 9, 10, and 11 to be dismissed for lack of evidence as to damages. The trial court found that the State had not met its burden as to those counts and entered not true findings thereon. J.R.T. also moved for count 3 to be dismissed asserting that the State failed to prove the correct date on which the damage occurred. The trial *302 court denied J.R.T.'s motion to dismiss count 3.
In an order issued by the trial court on January 30, 2002, the court set forth its findings of fact and conclusions of law. The trial court made true findings as to counts 1, 3, 5, 6, 7, and 8, and acknowledged that counts 2, 4, 9, 10, and 11 had been dismissed for lack of sufficient evidence. Following a dispositional hearing on February 25, 2002, the trial court placed J.R.T. on suspended commitment to the Department of Correction and placed him on probation. At a subsequent hearing on April 29, 2002, the trial court ordered J.R.T. to pay restitution in the sum of $1,005, representing the damages established as to five of the cars.
Upon appeal, J.R.T. argues that there was insufficient evidence to support the trial court's adjudication. Specifically, J.R.T. asserts that the trial court failed to base its findings upon the evidence presented at trial and that the determination that he was delinquent was not based upon proof beyond a reasonable doubt.[4]
When the State seeks to have a juvenile adjudicated to be a delinquent for committing an act which would be a crime if committed by an adult, the State must prove every element of the crime beyond a reasonable doubt. Ind.Code § 31-37-14-1 (Burns Code Ed. Repl.1997). See also R.L.H. v. State, 738 N.E.2d 312, 315 (Ind. Ct.App.2000). Upon review of a juvenile adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment. Moran v. State, 622 N.E.2d 157, 158 (Ind.1993). We will neither reweigh the evidence nor judge witness credibility. Id. If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the adjudication. Id. To support a true finding that J.R.T. had committed the numerous acts which would constitute criminal mischief if committed by an adult, the State was required to prove that J.R.T.(1) recklessly, knowingly, or intentionally; (2) damaged or defaced the property of another person; (3) without that person's consent. See I.C. § 35-43-1-2(a)(1).
J.R.T. first argues that he was not involved in the July 30 incident and directs our attention to the numerous witnesses who testified in support of his alibi defense. J.R.T. also asserts that many of the trial court's findings are related to a July 27, 2001 incident ("the first incident"), *303 to which J.R.T. admitted, and thus argues that those findings do not support the trial court's adjudication as to the acts of criminal mischief which occurred on July 30 ("the second incident").[5] As the trial court's findings in this regard are supported by the record, these arguments amount to mere requests for this court to credit J.R.T.'s alibi defense. This would require us to reweigh the evidence and judge the credibility of witnesses, which we will not do.
While we recognize that J.R.T. presented evidence tending to support his alibi defense, the trial court was under no obligation to credit it. See Williams v. State, 714 N.E.2d 671, 673 (Ind.Ct.App.1999) (trier of fact is entitled to determine which version of the incident to credit). Here, B.B. testified that on July 30 he and C.K. picked J.R.T. up at his house and that, at the direction of C.K., they drove around certain neighborhoods and J.R.T. and C.K. shot out car windows. B.B. further testified that the BB gun which they used to shoot out the car windows was purchased several days earlier, i.e. during the first incident to which J.R.T admits being involved. The State presented sufficient evidence that on or about July 30, 2001, J.R.T., along with two other juveniles, recklessly, knowingly, or intentionally, damaged property of others without their consent by shooting out car windows with a BB gun.
J.R.T. also argues that the State failed to prove "the nexus" between the victims and the alleged perpetrators. We disagree. Here, the State established that the three juveniles drove through random neighborhoods during the early morning hours on or about July 30, 2001 and, using a BB gun which they had purchased a few days earlier, shot out car windows without the car owners' consent. The State also presented evidence from the victims, who each testified that their car windows were shot out during the early morning hours on or about July 30, 2001. While no one witnessed the three juveniles during their mischievous rampage on or about July 30, 2001, a reasonable inference may be drawn from the evidence presented at trial that J.R.T., along with the two other juveniles, used a BB gun to shoot out the car windows of those victims who testified.
In a separate sufficiency argument, J.R.T. asserts that the trial court erred in failing to grant his motion to dismiss count 3. J.R.T. asserts that the charging information alleged that the damage to a 1999 GMC van which served as the basis for count 3 occurred on or about July 30, and that the State's evidence at trial established that the damage to the van occurred on July 3.
Here, count 3 of the charging instrument alleged that the act of criminal mischief occurred "[o]n or about the 30th day of July, 2001." Appendix at 27. At the denial hearing, Mike King, a representative of the victim Edwards Electrical & Mechanical, Incorporated, testified as follows:
"Q: Ok. And in your capacity with Edward's Electrical & Mechanical Incorporated, *304 do you ever have company vehicles at your residence?
A: Yes we do.
Q: Ok. I wanna ask you about some damage that was done on July 3rd, 2001. Was one of the company vehicles damaged on that day?
A: Yes it was." Transcript at 20.
Mr. King then proceeded, testifying about the damage to the vehicle.
Generally, a variance between the date alleged and the State's proof at trial does not mandate acquittal or reversal. R.L.H., 738 N.E.2d at 317. Further, it has been held that time is not an essential element of the crime of criminal mischief. Id. Where time is not "of the essence of the offense" the State is not required to prove the precise date alleged in the information, but need only prove that the crime occurred at any time within the statutory period of limitations. Id. Thus, notwithstanding the discrepancy in the dates,[6] the trial court did not err by denying J.R.T.'s motion to dismiss.
J.R.T. presents one other sufficiency argument which warrants discussion. As to count 1, the trial court entered a true finding as to criminal mischief, as a Class D felony if committed by an adult, because the damage to the vehicle exceeded $2,500. See I.C. § 35-43-1-2(a)(1)(B) (The offense of criminal mischief is elevated to a Class D felony if "the pecuniary loss is at least two thousand five hundred dollars ($2,500)."). At the denial hearing, the testimony of the victim established that the estimated cost of repairing the damage to a 1989 Ford Probe was $4,275.17. Upon cross-examination, the victim was questioned as to the value of the car and answered that she did not know. No other evidence as to the value of the car was submitted into evidence. The trial court accepted the testimony as to the estimated cost of repairing the car and therefore entered a true finding as to count 1, criminal mischief as a Class D felony.
At a subsequent hearing concerning the amount of restitution J.R.T. was required to pay to the victims, J.R.T. and the State agreed that the value of the 1989 Ford Probe was $2,135. The trial court accepted this amount for purposes of restitution and ordered that J.R.T. pay one-third of this amount, or $711, as restitution to the victim.
Here, for purposes of restitution, the parties and the court accepted the value of the car to be less than $2,500. In hindsight, it appears that if the act of criminal mischief had been committed by an adult, the offense could not have been elevated to a Class D felony as the pecuniary loss did not exceed $2,500. Nevertheless, "[a] child commits a delinquent act if, before becoming eighteen (18) years of age, the child commits an act that would be an offense if committed by an adult...." Ind. Code § 31-37-1-2 (Burns Code Ed. Repl. 1997). Thus, even given that the pecuniary loss was less than $2,500, J.R.T. committed an act which would be an offense if committed by an adult, that is, criminal mischief as a Class A misdemeanor. Therefore, the trial court's true finding that J.R.T. committed the delinquent act of criminal mischief as a Class D felony is without import.
Finally, J.R.T. claims that the trial court erred in refusing to admit into evidence the results of a polygraph examination. At the denial hearing, J.R.T. called as his first witness, Keith Klingler, a forensic polygraph examiner. The State immediately *305 objected, asserting that Mr. Klingler's testimony and any exhibits related thereto were "unreliable hearsay and therefore, inadmissible." Transcript at 57. J.R.T. responded to the objection stating that, while there is a standard to follow for the admission of polygraph evidence in a criminal proceeding, a juvenile delinquency proceeding is in the nature of a civil proceeding, and therefore, that the standard did not apply. In response, the State argued that the criminal rules of evidence controlled the proceeding and asserted again that the polygraph evidence was inadmissible hearsay. After considering the respective arguments, the trial court sustained the State's objection, thereby excluding Mr. Klingler's testimony. J.R.T.'s offer of proof established that Mr. Klingler, an expert having administered over 5,000 polygraph examinations, administered a polygraph examination to J.R.T., and that Mr. Klingler would have testified that in his opinion J.R.T. was telling the truth when, during the polygraph examination, he denied any connection with the BB gun shootings on July 30, 2001.
Evidence concerning polygraph evidence is generally disfavored and often referred to as "inherently unreliable."[7] Nevertheless, admission of polygraph evidence is permitted where four prerequisites are met: (1) the prosecution, defendant, and defense counsel must all sign a written stipulation providing for the defendant's submission to the examination and for the subsequent admission at trial of the results; (2) notwithstanding that stipulation, the admissibility of the test results is at the trial court's discretion regarding the examiner's qualifications and the test conditions; (3) the opposing party shall have the right to cross-examine the examiner if his or her graphs or opinions are offered into evidence; and (4) the jury is instructed that, at most, the examiner's testimony tends only to show whether the defendant was being truthful at the time of the examination, and that it is for the jury to determine the weight and effect to be given to the examiner's testimony. Willey v. State, 712 N.E.2d 434, 439 (Ind.1999).
It would seem to be somewhat of a contradiction to say that polygraph evidence is "inherently unreliable" and yet hold that a stipulation by the parties cloaks the polygraph results with sufficient reliability to be admissible into evidence. This contradiction remains even though the trial court is afforded discretion to disallow such evidence despite a stipulation if not satisfied with the qualifications of the examiner or as to the conditions under with the test was administered. It would appear that absent a defect as to one or both of those factors the trial court must admit the polygraph results, thereby conferring "reliability" upon that otherwise "inherently unreliable" evidence. Perhaps it is more accurate to state that a party who stipulates to such evidence loses the right to object to its admissibility. Yet the dilemma then arises as to how the jury is to be instructed in considering such evidence. Must it be viewed as any other evidence? Or is it to be given a heightened degree of scrutiny as to its reliability?
Under the current state of the law, we know only that a defendant is entitled to a limiting instruction if he requests such. See Sanchez v. State, 675 N.E.2d 306 (Ind.1996). The giving of such an instruction would certainly seem to confer a degree of reliability upon the results of *306 polygraph examinations and thus seems to greatly dilute the usually phrased proposition that such results are "inherently unreliable." Perhaps it is more accurate to say that polygraph examination results are not favored with respect to their admissibility, not that they are "inherently unreliable."
Notwithstanding the particularized views of this author, we hold that the trial court did not err in excluding the polygraph evidence. J.R.T., citing Sauzer-Johnsen v. Sauzer, 544 N.E.2d 564 (Ind. Ct.App.1989), argues that a written stipulation is not required in a juvenile delinquency proceeding, as such is civil in nature.[8] In Sauzer, the court was presented with an appeal following an action brought by Husband to revoke or modify the property division as set forth in a prior dissolution proceeding. One of Wife's challenges upon appeal was that it was error for the trial court to admit her polygraph examinations into evidence, even though she orally stipulated to their admission during a hearing, because the trial court "suggested" that she submit to the polygraph examination. In reciting the standard for admission of polygraph evidence, the court correctly noted that polygraph examinations are generally inadmissible absent a valid stipulation between the parties. Id. at 568. The court went further, acknowledging that in criminal cases, a stipulation must be in writing and signed by both the defendant and the prosecutor, but stating that there was no such requirement in civil cases. Id. The court thus found that Wife's oral stipulation to the admission of her polygraph examinations was valid. Id.
While juvenile proceedings are civil in nature, the criminal rules of evidence are applicable. J.V. v. State, 766 N.E.2d 412, 414 (Ind.Ct.App.2002), trans. denied. Juvenile delinquency proceedings are thus distinguishable from ordinary civil cases and, therefore the present case is distinguishable from Sauzer. Indeed, a child who is alleged to be delinquent is charged by the State with an act which would be a crime if committed by an adult. Id. at 414-15. To that end, the criminal standard of proof remains in that the State must prove the delinquent act beyond a reasonable doubt to achieve a true finding of delinquency. Id. at 415. "Put another way, it is the child's age and not the status, nature or class of offense that removes the case from our adult criminal system." Id. Thus, we conclude that the prerequisites established for the admission of polygraph evidence in a criminal proceeding, including that stipulations must be in writing and signed by the prosecutor, defendant, and defense attorney, are applicable in juvenile delinquency proceedings. As there was no such stipulation in the present case, the polygraph evidence J.R.T. sought to present was inadmissible.[9]
The trial court's judgment is affirmed.
SHARPNACK, J., and KIRSCH, J., concur.
NOTES
[1] Ind.Code § 35-43-1-2(a) (Burns Code Ed. Supp.2001).
[2] I.C. § 35-43-1-2(a).
[3] I.C. § 35-43-1-2(a).
[4] In his brief, J.R.T. challenges almost all of the trial court's findings, asserting that some of them are irrelevant or unsupported by the evidence, that others do not stand independently, or that they do not constitute findings, but rather are restatements of the testimony presented. Only one of the 19 findings is challenged on the latter grounds. In any event, that finding was merely cumulative of other findings. We will not address each and every challenge because, after reviewing the trial court's findings and conclusions of law, it is clear that to address most of J.R.T.'s arguments, we would have to reweigh evidence and judge the credibility of witnesses. See Moran v. State, 622 N.E.2d 157, 158 (Ind. 1993). As to J.R.T.'s other challenges to the trial court's findings and conclusions, the alleged errors do not go to the material elements of the crime. As an example, J.R.T. challenges the trial court's finding and conclusion of law as it relates to count 5 that a "2000 Ford van" was damaged. Appendix at 12. J.R.T. asserts that the victim testified that his "2000 Ford Windstar" was damaged, and that there was no testimony that such vehicle was a van. Transcript at 26. Whether or not such a vehicle is a van is irrelevant. The State proved that there was damage to the vehicle, that the owner of the vehicle did not consent, and a reasonable inference can be drawn that J.R.T. recklessly, knowingly, or intentionally committed the act which resulted in the damage. This is all that the statute requires. See I.C. § 35-43-1-2.
[5] According to J.R.T., there are two incidents which should be distinguished. J.R.T. admitted that he committed an act of delinquency, criminal conversion, a Class A misdemeanor if committed by an adult, arising out of an incident which occurred on July 27, 2001 (the first incident). J.R.T. admitted that on July 27, 2001, he, along with B.B., C.K., and another juvenile, used a BB gun to shoot out a car window in order to steal the car stereo. J.R.T. asserts that the July 27 incident is independent of the July 30 incident which is the subject of this proceeding. J.R.T. maintains that he was not involved in the July 30 incident.
[6] It could be fairly concluded that the discrepancy was either an inadvertent slip of the tongue by the prosecutor or a mere scrivener's error in transcription.
[7] As recently as in Gray v. State, 758 N.E.2d 519, 522 (Ind.2001), our Supreme Court has reiterated that the rule against admissibility is "because of the inherent unreliability of polygraph examinations."
[8] J.R.T. also asserts that the hearsay objection proffered by the State was not a proper objection to the admissibility of polygraph evidence in a juvenile adjudication as such is a civil proceeding. Further, J.R.T. asserts that the State only objected on hearsay grounds and did not argue that a stipulation was required. However, as we have already noted, the State, in its response to J.R.T.'s argument in support of admissibility, argued that the criminal rules of evidence apply to juvenile delinquency cases, thereby incorporating the stipulation requirement.
[9] Moreover, even if we were to agree with J.R.T. that the criminal standard for admissibility should not apply to juvenile delinquency proceedings, we would still find no error. Although the Sauzer court held that a written stipulation was not required in civil cases, it is clear from the Sauzer opinion that a stipulation, albeit unwritten, was still required before the polygraph evidence could be admitted. Here, there is nothing in the record which indicates that there was a stipulation of any kind, written or oral. Thus, the trial court did not abuse its discretion in excluding the proffered polygraph evidence.