**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 08 2014, 9:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY ELFTMAN**
Deputy Public Defender
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RAYMOND SHELLEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 34A02-1312-CR-1063 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable Douglas A. Tate, Judge
Cause No. 34D03-1211-CM-1181

**September 8, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Following a bench trial, Raymond Shelley was convicted of Class B misdemeanor criminal mischief.[1]  He appeals, claiming that the evidence was insufficient because the testimony of the victim, who was the only eyewitness, was incredibly dubious.

We affirm.

## FACTS AND PROCEDURAL HISTORY

One evening in October 2012, Shelley was at the home of Angela Rockeymoore. The two had dated off and on for several years.  That evening, they had an argument, and Shelley picked up his backpack and left the house.  As he was walking away, a vehicular accident occurred on the street in front of Rockeymoore's home.  It involved several cars, including some that belonged to Rockeymoore's neighbors.  Shelley ran back to Rockeymoore's house and banged on her window, asking her to call the police.  Police arrived to handle the accident scene, and Shelley remained at Rockeymoore's residence during this time.  Because one of the vehicles involved in the accident was up on the sidewalk behind Rockeymoore's parked vehicle, police asked Rockeymoore to move her car to provide the tow trucks with the necessary access.  She moved her car as requested and parked it behind her house.

After the vehicles were towed, but while police were still on the scene, Rockeymoore and Shelley argued again, as they stood in front of her house.  At that time, Shelley's backpack was on Rockeymoore's enclosed front porch, and Rockeymoore picked it up and threw it outside.  She then went inside and shut the door.  Shelley picked it up

---

[1] *See* Ind. Code § 35-43-1-2(a)(1).  We note that, effective July 1, 2014, a new version of this criminal statute was enacted.  Because Shelley committed his crime prior to July 1, 2014, we will apply the statute in effect at the time he committed the offense.

and walked around to the back of Rockeymoore's house. Thinking that "he was going to do something," Rockeymoore ran through her house and opened her back door and saw Shelley slash the tires on her car and walk away down the alley. *Tr*. at 8. He was the only person she saw behind her house. She yelled at Shelley, telling him that she was going to tell the police.

Knowing that the police were still on the scene for the car accident, Rockeymoore went immediately to the front of her house and told Kokomo Police Department Officer Melissa Darlin about what had happened, and Rockeymoore asked Officer Darlin to come to the back of the house with her. Officer Darlin walked around the house with Rockeymoore as requested, and she saw the slashed tires, which were almost flat, and heard a hissing sound of air coming out of them.

In September 2013, the State charged Shelley, by an amended information, with Class B misdemeanor criminal mischief. At the November 2013 bench trial, Rockeymoore testified that she saw Shelley jab the front and back tires on the passenger side of her car, pick up his backpack, and walk away. She testified that she did not see the knife on that date, but previously had seen Shelley carry a pocketknife in his backpack. On cross examination, defense counsel presented Rockeymoore with her victim's impact statement, completed on November 27, 2012, and asked her to read a portion of a sentence that she wrote, which said, ". . . I didn't actually see him do it." *Id*. at 15; *Def.'s Ex*. A. Upon redirect, Rockeymoore read the entire sentence, which said, "The Officer told me they could not arrest him because I didn't actually see him do it." *Tr*. at 17; *Def.'s Ex*. A. Rockeymoore explained that what she meant in her statement was that Officer Darlin could

3

not arrest Shelley on the spot because she, *i.e*. Officer Darlin, did not witness Shelley slash the tires. *Tr*. at 17.

Officer Darlin also testified at trial. While assisting at the scene of the auto accident, she observed Rockeymoore and Shelley in front of the house, and by their body language and demeanor, she believed they were having a disagreement of some sort. She saw Rockeymoore enter her house, but when Shelley attempted to follow her inside, Rockeymoore shook her head "no." *Id*. at 20. She saw Shelley pick up the backpack from the ground and walk to the back of the house. Shortly after that, Rockeymoore approached Officer Darlin and reported that Shelley had slashed her tires, and Rockeymoore asked Officer Darlin to accompany her to the back to see the vehicle. When she and Rockeymoore reached the car, Officer Darlin observed a gash in each of the two passenger-side tires and that the tires were almost completely flat, but she could hear air hissing out of them. Officer Darlin did not observe Shelley in the area.

Shelley testified as well. He testified that he was at Rockeymoore's house on the evening in question and that he left, not because they had had an argument, but because he had to work the next day. He explained that after Rockeymoore moved her car to the back of the house, he and Rockeymoore watched the accident clean-up for thirty minutes or so. At some point, Shelley said something that angered Rockeymoore, so he grabbed his backpack and left, but was "nowhere near her car." *Id*. at 30.

At the conclusion of the evidence, the trial court found Shelley guilty as charged and sentenced him to 180 days of incarceration at the Howard County Criminal Justice

Center, all of which the trial court suspended, and ordered him to pay restitution. Shelley now appeals.

## DISCUSSION AND DECISION

Shelley claims that the evidence was insufficient to support his conviction for criminal mischief. In reviewing sufficiency of the evidence, we do not reweigh the evidence or reevaluate the credibility of witnesses. *Wallace v. State*, 896 N.E.2d 1249, 1251 (Ind. Ct. App. 2008), *trans. denied*. We consider only the probative evidence and reasonable inferences supporting the verdict, and will affirm if a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* Our review is governed by this same standard when a conviction is based on circumstantial evidence. *Gaerte v. State*, 808 N.E.2d 164, 166 (Ind. Ct. App. 2004) (when conviction is based on circumstantial evidence, we will not disturb verdict if factfinder could reasonably infer from evidence that defendant is guilty beyond reasonable doubt), *trans. denied*. The circumstantial evidence need not overcome every reasonable hypothesis of innocence; the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

To convict Shelley of criminal mischief as charged, the State was required to prove that Shelley knowingly or intentionally damaged or defaced Rockeymoore's property, namely her car's tires, without her consent. Ind. Code § 35-43-1-2(a); *Appellant's App*. at 22. Shelley claims that the evidence was insufficient because "[t]he only evidence presented at trial was the statement of an eyewitness" and portions of that testimony were contradictory and the testimony is incredibly dubious. *Appellant's Br*. at 3.

The rule of incredible dubiosity has been restated by our Supreme Court as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007). "[D]iscrepancies between a witness's trial testimony and earlier statements made to police and in depositions do not render such testimony 'incredibly dubious.'" *Holeton v. State*, 853 N.E.2d 539, 542 (Ind. Ct. App. 2006) (citing *Stephenson v. State*, 742 N.E.2d 463, 497 (Ind. 2001)).

Here, Shelley contends Rockeymoore's pretrial victim's impact statement, indicating she did not see Shelley slash her tires, and her trial testimony, where she stated she witnessed him doing it, are "in direct contradiction" and are "inherently improbable." *Appellant's Br*. at 4. On this basis, Shelley urges that Rockeymoore's testimony is incredibly dubious. We find, however, that Rockeymoore's testimony does not meet the requirements of that rule's application.

First, contrary to Shelley's assertion that the State presented "no evidence" other than Rockeymoore's testimony, hers was not the only evidence presented. *Id*. at 4; *see also id.* at 3 ("The only evidence presented at trial was the statement of [Rockeymoore].") Officer Darlin also testified at trial, and her testimony provided circumstantial evidence that corroborated Rockeymoore's version of events. Officer Darlin observed Rockeymoore and Shelley arguing. She saw Rockeymoore throw a backpack out the front door of the porch and watched Shelley pick it up and walk around to back of the house.

Just minutes later, Rockeymoore approached Officer Darlin and told her about the tires, and Officer Darlin accompanied Rockeymoore behind the house to the parked car, where she saw the slashed tires and heard air still hissing as it escaped from them.

Second, Rockeymoore's testimony was not so incredibly dubious or inherently improbable that no reasonable factfinder could believe it. She testified that Shelley was at her house on the night in question, and they argued twice. The first time, Shelley left on foot but came back to have Rockeymoore contact the police about the car accident. They argued again, outside in front of the house, and within view of police. Rockeymoore threw Shelley's backpack outside, and he picked it up and walked to the back of her house, where he knew she had just parked her car. Although she did not observe a pocketknife that evening, she had observed him carry one in his backpack on prior occasions. He was the only person behind her house at that time. She immediately summoned Officer Darlin, who came around with Rockeymoore to the rear of the house, and they both saw the slashed passenger-side tires and still heard air hissing out of them. None of this was contradictory or inconsistent. That Rockeymoore's pretrial statement is not identical or entirely consistent with her trial testimony, does not automatically render it inherently dubious. *Livers v. State*, 994 N.E.2d 1251, 1256 (Ind. Ct. App. 2013) (incredible dubiosity rule applies only when witness contradicts himself or herself in single statement, and does not apply to conflicts between multiple statements); *Holeton*, 853 N.E.2d at 542 (discrepancies between witness's trial testimony and earlier statements do not render testimony incredibly dubious). At trial, Rockeymoore offered her explanation of what she meant in her victim's impact statement, namely that Officer Darlin did not observe Shelley commit the act and

7

therefore could not arrest him at that time. The trial court, as the trier of fact, was free to believe or disbelieve Rockeymoore's testimony and explanation in that regard and weigh said testimony accordingly. *Gayden v. State*, 863 N.E.2d 1193, 1199 (Ind. Ct. App. 2007) (appellate court does not assess witness credibility), *trans. denied*. Furthermore, although Shelley presented a different version of events that night, claiming there was no argument and that he did not slash Rockeymoore's tires, the trial court was under no obligation to credit it. *J.R.T. v. State*, 783 N.E.2d 300, 303 (Ind. Ct. App. 2003), *trans. denied*.

Based upon the evidence and testimony most favorable to the conviction, we find that Rockeymoore's testimony was not incredibly dubious, and the evidence presented was sufficient to support Shelley's conviction for criminal mischief.

Affirmed.

BAILEY, J., and MAY, J., concur.