## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 08 2015, 11:00 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of J.M.C., A Child Alleged to be a Delinquent Child,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

May 8, 2015

Court of Appeals Case No. 62A04-1411-JV-525

Appeal from the Perry Circuit Court.
The Honorable Lucy Goffinet, Judge.
The Honorable Karen Werner, Magistrate.
Cause No. 62C01-1408-JD-161

**Barteau, Senior Judge**

# Statement of the Case

J.M.C. appeals from the juvenile court's adjudication of him as a delinquent child for what would constitute criminal mischief[1] as a Class B misdemeanor if committed by an adult and the status offense of habitual disobedience of a parent, guardian, or custodian.[2] We affirm.

# Issues

J.M.C. presents the following restated issues for our review:

I. Whether there is sufficient evidence to support J.M.C.'s adjudication as a delinquent child for committing what would constitute criminal mischief if committed by an adult.

II. Whether there is sufficient evidence to support J.M.C.'s adjudication as a delinquent child for committing the status offense of habitual disobedience of a parent, guardian, or custodian.

# Facts and Procedural History

Prior to August 2, 2014, J.M.C., who was seventeen years old, was living with his mother, S.D., S.D.'s boyfriend, a brother, a sister, J.M.C.'s girlfriend, and their two-year-old daughter in Tell City, Indiana. According to S.D., her boyfriend purchased the house and they all moved into it sometime in March or April of that year. J.M.C. had returned from Florida to Indiana to live with his

---

[1] Ind. Code § 35-43-1-2(a) (2014).

[2] Ind. Code § 31-37-2-4 (1997).

mother in approximately May 2014, and was on probation through the State of Florida.

[4] Sometime around August 2, 2014, J.M.C. left the house and began staying with his cousin, A.K., and his friend, T.Z. S.D. did not approve of J.M.C. staying out overnight without her permission and did not approve of J.M.C. staying with his cousin. On August 5, 2014, when S.D. learned of J.M.C.'s whereabouts, she contacted local law enforcement out of concern that J.M.C. might be found in violation of the conditions of his probation.

[5] Two police officers were dispatched to the house where J.M.C. was staying and transported him home to S.D.'s house. Officer Derrick Lawalin, who had taken S.D.'s complaint, was at S.D.'s house when J.M.C. was brought there by the officers.

[6] Later that same day, Officer Lawalin was dispatched to S.D.'s house upon receiving a 911 call placed by S.D. S.D. and J.M.C. had been arguing because S.D. had picked up his paycheck from his employer. S.D. had barricaded herself, her friend, J.M.C.'s girlfriend, and J.M.C.'s daughter in S.D.'s bedroom. S.D. had locked the door because J.M.C. was upset. J.M.C. began pounding loudly on the door.

[7] When Officer Lawalin arrived at the house, J.M.C. met him at the front door. J.M.C. appeared to be upset and angry. Everyone else was barricaded in the bedroom. Officer Lawalin placed J.M.C. in handcuffs and left him with other officers who had arrived at the house. J.M.C. was secured because the dispatch

reported that J.M.C. had a blunt object and was trying to force his way into the bedroom. Officer Lawalin went inside the house where he observed what appeared to him to be fresh damage to the bedroom door. He also saw a "hammer type object" that "had the appearance of like a hatchet." Tr. p. 60. He then contacted J.M.C.'s probation officer, Chris Wagner. Wagner was the Chief Probation Officer of the Perry County Probation Department, and as the primary juvenile probation officer was in charge of courtesy supervision of J.M.C. for the State of Florida.

[8] Wagner spoke with J.M.C. at the police station. J.M.C. told Wagner that he had been arguing with his mother because he had been going places she did not approve of and was staying out late. They also discussed the fact that he was gone overnight and that was against his mother's rules. Their arguments had been escalating over time.

[9] On August 12, 2014, the State alleged that J.M.C. was a delinquent child for having committed criminal mischief and the status offense of habitual disobedience of a parent, guardian, or custodian. The juvenile court held a fact-finding hearing on October 3, 2014, after which the juvenile court adjudicated J.M.C. a delinquent child on both counts. On October 22, 2014, J.M.C. received an indeterminate commitment to the Indiana Department of Correction. J.M.C. now appeals.

# Discussion and Decision

## Standard of Review

[10] In both issues raised by J.M.C. on appeal, he contends that the evidence is insufficient to support the adjudication. "When the State seeks to have a juvenile adjudicated to be a delinquent for committing an act which would be a crime if committed by an adult, the State must prove every element of the crime beyond a reasonable doubt." Ind. Code § 31-37-14-1 (1997). "Upon review of a juvenile adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment." *J.R.T. v. State*, 783 N.E.2d 300, 302 (Ind. Ct. App. 2003), *trans. denied*. "We will neither reweigh the evidence nor judge witness credibility." *Id.* "If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the respondent was guilty beyond a reasonable doubt, we will affirm the adjudication." *Id.*

## I. Criminal Mischief

[11] J.M.C. claims that there is insufficient evidence to support his adjudication of criminal mischief. In order to establish that J.M.C. committed what would be the Class B misdemeanor offense of criminal mischief if committed by an adult, the State was required to prove beyond a reasonable doubt that J.M.C. recklessly, knowingly, or intentionally damaged or defaced property of another person without the other person's consent. Ind. Code § 35-43-1-2(a). J.M.C. argues that the evidence establishes that S.D.'s boyfriend was the owner of the

property at issue and without his testimony on the element of consent, the evidence is insufficient.

[12] The record reflects that when asked by J.M.C.'s counsel about the age of the house in which they lived, S.D. testified that "I'm really not sure, we um, my boyfriend just purchased it. We just moved in like April, March or April so I don't really know how old it is." Tr. p. 44. S.D.'s boyfriend did not testify at the fact-finding hearing. However, the record establishes that he was not at home at the time of the incident. Therefore, he could not have consented to J.M.C. defacing the bedroom door of the house. Further, the record shows that S.D. placed a 911 call to police officers after locking that door and barricading herself and others in her bedroom. To the extent S.D. might be considered the property owner, it would be reasonable to infer from those facts that S.D. did not consent to J.M.C. defacing the door.

[13] "Where circumstantial evidence is used to establish guilt, the question for the reviewing court is whether reasonable minds could reach the inferences drawn by the jury; if so, there is sufficient evidence." *Maxwell v. State*, 731 N.E.2d 459, 462 (Ind. Ct. App. 2000), *trans. denied*. "Furthermore, we 'need not determine whether circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence, but rather whether inferences may be reasonably drawn from that evidence which supports the verdict beyond a reasonable doubt.'" *Id.* at 463 (quoting *Bustamante v. State*, 557 N.E.2d 1313, 1318 (Ind. 1990) (citation omitted)).

Here, although the State did not present direct evidence of lack of consent, it did present sufficient circumstantial evidence from which the fact-finder could have concluded beyond a reasonable doubt that J.M.C. damaged the bedroom door without the consent of the property owner.

## II. Habitual Disobedience

The State alleged that J.M.C. was a delinquent child for committing the delinquent act of habitual disobedience of a parent, guardian, or custodian. J.M.C. claims that there is insufficient evidence that S.D. was J.M.C.'s "custodial parent" or that he broke any specific rules. Appellant's Br. p. 7.

In order to prove this status offense, the State was required to establish beyond a reasonable doubt that before becoming eighteen years of age, J.M.C. habitually disobeyed the reasonable and lawful commands of his parent, guardian, or custodian. Ind. Code § 31-37-2-4.

J.M.C. was seventeen years old at the time of the fact-finding hearing. Although J.M.C. argues that there is insufficient evidence to establish that S.D. was J.M.C.'s custodial parent, the plain wording of the statute requires that the State establish that S.D. was J.M.C.'s parent, guardian, or custodian. *See* Ind. Code § 31-37-2-4. S.D. was present at the initial hearing, two status conferences during one of which he requested to be released back to S.D., his mother, the fact-finding hearing, and the dispositional hearing. S.D. testified that she was J.M.C.'s mother, and that he was her son. Additionally, J.M.C.'s counsel objected to statements J.M.C. made to his probation officer after his

arrest because S.D. was not present when he was questioned. The evidence is sufficient to establish that S.D. was J.M.C.'s parent.

[18] Next, J.M.C. challenges the determination that he broke any specific rules. The record reflects that at times, S.D.'s testimony during the fact-finding hearing differed from her initial statements to police officers. J.M.C. told Wagner, his probation officer, that he had been arguing with his mother because he had been going places she did not approve of and was staying out late. They also discussed the fact that he was gone overnight and that was against his mother's rules. Arguments between the two had been escalating over time. S.D. testified that once she became aware of J.M.C.'s whereabouts, she contacted authorities because she was concerned about his compliance with his probation. S.D. did not approve of J.M.C. staying with A.K. and T.Z., but he did so nonetheless. The evidence is sufficient that J.M.C. broke specific rules S.D. had established and of which J.M.C. was aware.

## Conclusion

[19] In light of the foregoing, we affirm the juvenile court's decision.

[20] Affirmed.

Najam, J., and Kirsch, J., concur.