## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 16 2017, 9:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen F. Hurley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrew A. Kobe
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| U.J., <br> *Appellant-Respondent*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner*. | March 16, 2017 <br><br> Court of Appeals Case No. 49A04-1608-JV-1960 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marilyn A. Moores, Judge <br><br> The Honorable Scott Stowers, Magistrate <br><br> Trial Court Cause No. 49D09-1602-JD-0167 |

**Brown, Judge.**

[1] U.J. appeals the juvenile court's determination that she committed delinquent acts which, if committed by an adult, would constitute attempted criminal trespass and battery against a public safety official as level 6 felonies and resisting law enforcement as a class A misdemeanor. U.J. raises two issues which we consolidate and restate as whether the evidence is sufficient to sustain the court's determination. We affirm.

## Facts and Procedural History

[2] On January 28, 2016, Indianapolis Public School Officer Lewis Speaks, who worked at Crispus Attucks Medical Magnet High School, was contacted by a school administrator and informed that a former student was trying to enter the school building through door 3, which was not a public entrance. Officer Speaks approached door 3 and observed U.J., who was born in August 2000, pulling on the door. When U.J. saw Officer Speaks approaching, she ran away and entered a van. Officer Speaks walked to the van, spoke with U.J. and the vehicle's driver, U.J.'s mother, and informed them that all visitors were required to use door 2, to which he pointed, and that any other door was not an option.[1] Officer Speaks entered the school building, and approximately ten minutes later he looked outside and observed the van driving around the parking lot. He again exited the building and approached the vehicle, told U.J. and her mother that they were welcome to enter the building but that they

---

[1] Officer Speaks testified that there is a large space between doors 2 and 3.

could not continue to sit outside and drive around the school parking lot, and again explained where the public entrance was located. U.J.'s mother drove the vehicle out of the school's parking lot, and Officer Speaks went inside.

[3] Officer Speaks received a radio communication from a school custodian that a person was at door 16 on the opposite side of the building. Officer Speaks approached door 16 and saw U.J. run and jump into the van.[2] Officer Speaks approached the vehicle and told U.J. that he needed to see some identification and told her mother that he needed to see a driver's license. U.J. and her mother did not comply, and U.J.'s mother said "I hate the f-ing police and I don't even have my driver's license, they're suspended." Transcript at 52. Officer Speaks called to Officer Carlos Bailey for backup and placed U.J.'s mother in handcuffs. Officer Bailey arrived, told U.J. to place her hands behind her back, and reached for her wrist. U.J. pushed Officer Bailey with two open hands, and he was shoved backwards. After she shoved him, U.J. also tried to pull away from Officer Bailey. U.J. tried to kick Officer Bailey before he backed away. Officer Speaks instructed Officer Bailey to come over to U.J.'s mother, and Officer Speaks moved U.J. against the vehicle and placed her in handcuffs. As the officers escorted U.J. and her mother to the school police

---

[2] When asked if U.J. was pulling on the door, Officer Speaks replied: "She was pulling on door three, but I- I can't say, how the door's set up, I can't say I saw her pulling on door sixteen. When she saw me, she fled." Transcript at 14.

office in the building, U.J. resisted the officers and said "[f]u-- the police" and "I couldn't even call my fu--ing father."[3] *Id.* at 58.

[4] On February 1, 2016, the State filed a petition alleging U.J. was delinquent for committing criminal trespass as a level 6 felony, battery against a public safety official as a level 6 felony, and resisting law enforcement as a class A misdemeanor. In April 2016, the State filed an additional count alleging U.J. was delinquent for committing attempted criminal trespass as a level 6 felony. On June 22, 2016, the court held a hearing at which Officers Speaks and Bailey testified. The court found that U.J. committed attempted criminal trespass and battery against a public safety official as level 6 felonies and resisting law enforcement as a class A misdemeanor if committed by an adult.

## *Discussion*

[5] The issue is whether the evidence is sufficient to sustain the juvenile court's determination that U.J. committed delinquent acts which, if committed by an adult, would constitute attempted criminal trespass and battery against a public safety official as level 6 felonies and resisting law enforcement as a class A misdemeanor. When the State seeks to have a juvenile adjudicated to be a delinquent for committing an act which would be a crime if committed by an

---

[3] Officer Bailey testified "we escort both mom and . . . daughter back to the police office inside the building. While walking back to the office, the mom keep [sic] cursing. 'I,' you know, 'hate the blah blah police.' She was kicking, pulling away, fighting us, actively fighting all the way back to the office." Transcript at 81. When asked "[o]kay, was [U.J.] also resisting," Officer Bailey replied "[y]es, sir. Both," and when asked "both of you," he responded "[y]es." *Id.*

adult, the State must prove every element of the crime beyond a reasonable doubt. *J.R.T. v. State*, 783 N.E.2d 300, 302 (Ind. Ct. App. 2003), *trans. denied*. Upon review of a juvenile adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment. *Id.* We will neither reweigh the evidence nor judge witness credibility. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the adjudication. *Id.*

[6] With respect to the juvenile court's finding of attempted criminal trespass, U.J. argues that at no time was she denied entry to the school and that Officer Speaks never saw her pull on door 16. The State responds that the school did not consent to U.J. entering the school building except through door 2, that U.J. attempted to enter the building through doors 3 and 16, and that, while there was no direct testimony of someone observing her attempt to open door 16, it is a reasonable inference that she attempted to open door 16 just as she attempted to open door 3.

[7] Ind. Code § 35-43-2-2 provides in part that a person who, not having a contractual interest in the property, knowingly or intentionally enters the real property of another person after having been denied entry by the other person or that person's agent, or who knowingly or intentionally interferes with the possession or use of the property of another person without the person's consent, commits criminal trespass as a class A misdemeanor, and that the offense is a level 6 felony if it is committed on school property. Ind. Code § 35-

43-2-2(b). Ind. Code § 35-41-5-1 provides that a person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime.

[8] The evidence most favorable to the attempted criminal trespass finding reveals that Officer Speaks first observed U.J. pulling on door 3 and, when she saw him, run to a vehicle driven by her mother. Officer Speaks specifically informed U.J. that all visitors were required to use door 2 and that entry through any other door was not an option, and he pointed to door 2. Approximately ten minutes later, Officer Speaks informed U.J. and her mother that they could not continue to drive around the parking lot and again explained where the public entrance was located. After Officer Speaks received a radio communication from the school custodian, he approached door 16 and saw U.J. Officer Speaks testified: "I walked over, I approached door sixteen where she was trying to enter, and she ran and she jumped into the silver van." Transcript at 14. When asked, "when she was at these doors, was she pulling on them at all," he answered "[s]he was pulling on door three, but I- I can't say, how the door's set up, I can't say I saw her pulling on door sixteen. When she saw me, she fled." *Id.* When asked, "[b]ased on what you saw, did you believe that she was trying to get access to the school . . . through door sixteen," Officer Speaks answered "[y]es," and when asked if he also believed she was trying to enter through door 3, he again answered affirmatively. *Id.* at 17. He indicated that, based on his experience, most students know to go through door 2, that

"there's a sign on each door letting students and parents know that the public entry, if they need to visit somebody or check in, is on door two," and that sign is on all of the doors. *Id.* at 18. U.J. acknowledges that "[s]he and her mother were first told they must enter through Door 2, a fact they already knew." Appellant's Brief at 11 (citing Transcript at 35 (when asked "[a]s a student, . . . you knew the public entrance was door two, correct," U.J. answered affirmatively).

[9] The juvenile court as factfinder reasonably could have inferred that, after being informed more than once that the only authorized entrance to the school was through door 2, U.J. attempted to enter the school through door 16. Based upon the record, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could find that U.J. committed acts that, if committed by an adult, would constitute attempted criminal trespass as a level 6 felony.

[10] With respect to the juvenile court's findings regarding battery on a public safety official and resisting law enforcement, U.J. argues that certain discrepancies in the officers' testimony create a reasonable doubt that she committed the offenses.[4] The State argues both officers unequivocally testified that U.J.

---

[4] U.J. asserts the officers' testimony conflicted and Officer Speaks's testimony conflicted with his prior deposition testimony and that the discrepancies included which officer ordered U.J. not to reach into her pocket, whether at one point U.J. entered the car and locked the doors, the extent to which Officer Bailey had to forcibly remove U.J. from the vehicle, and whether Officer Speaks was placing U.J. in handcuffs when Officer Bailey arrived.

pushed Officer Bailey with two hands during the confrontation, U.J. tries to dismantle this evidence by pointing to alleged inconsistencies in the officers' testimony about other actions, and her argument is a request to reweigh the evidence.

[11] The record reveals that Officer Speaks testified U.J. "pushed Officer Bailey with two open hands" and indicated that Officer Bailey was shoved backwards. Transcript at 55. Officer Speaks also testified that, after she shoved Officer Bailey, U.J. tried to pull away from him. Officer Speaks testified he then placed U.J. against the vehicle and handcuffed her. Officer Bailey testified that, when he approached U.J., "[s]he pushed [him] away" and that she pushed him "with both hands." *Id.* at 80. He also testified that U.J. tried to kick him before he backed away and that, while U.J. was being escorted to the building, she resisted the officers. U.J.'s argument is a request that we judge the credibility of the witnesses and reweigh evidence, which we will not do. *See J.R.T.*, 783 N.E.2d at 302. Based upon the record, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could find that U.J. committed acts that, if committed by an adult, would constitute battery on a public safety official as a level 6 felony and resisting law enforcement as a class A misdemeanor.

## *Conclusion*

[12] For the foregoing reasons, we affirm the juvenile court's determination that U.J. committed delinquent acts which, if committed by an adult, would

constitute attempted criminal trespass, battery on a public safety official, and resisting law enforcement.

[13]  Affirmed.

Vaidik, C.J., and Bradford, J., concur.