## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 30 2019, 10:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel C. Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Emily Kopp
Certified Legal Intern

Molly McCann
Certified Legal Intern

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

X.D.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

September 30, 2019

Court of Appeals Case No.
19A-JV-896

Appeal from the Putnam Circuit Court

The Honorable Matthew L. Headley, Judge

Trial Court Cause No.
67C01-1901-JD-6

**Brown, Judge.**

[1] X.D. appeals the juvenile court's dispositional order and its determination that he committed acts of intimidation which would constitute class A misdemeanors if committed by an adult. We affirm and remand.

*Facts and Procedural History*

[2] On December 13, 2018, X.D. was in his seventh-grade social studies class with L.B., K.R., C.R., and C.G. L.B. and K.R. were study partners. According to L.B., at some point there was an argument, and X.D. said "[d]on't be surprised if you get shot." Transcript Volume 2 at 15. L.B. thought that X.D.'s statement "was in response to" him and K.R. *Id*. According to K.R., he and L.B. were trying to study, X.D. kept coming into their conversation, L.B. told X.D. to be quiet, "that's when [X.D.] threatened to bring a gun to school and shoot us," X.D. threatened him and L.B., and X.D. said "[d]on't be surprised if you're the only two shot." *Id*. at 18. According to C.R., X.D. joined L.B. and K.R.'s conversation, one of them told X.D. to shut up, and then X.D. told L.B. and K.R. "I'm going to bring a gun to school and I'm going to shoot you, both of you two." *Id*. at 21. According to C.G., X.D. "was saying answers to [L.B.] when [L.B.] and [K.R.] were studying," "then [L.B.] told him to be quiet and go away and leave him alone," "then [X.D.] threatened to bring a gun and shoot them," X.D. was speaking to L.B. and K.R., and X.D. made the threat in response to L.B. telling him to be quiet. *Id*. at 24.

[3] On January 24, 2019, the State filed a Petition Alleging Delinquency alleging that X.D. committed the offenses of intimidation against L.B. and K.R. which would constitute class A misdemeanors if committed by an adult. A

preliminary inquiry report was filed with the court stating in part: "Youth is currently in the 7th grade at Greencastle High School. Youth currently has an IEP.[1] Youth reports receiving discipline referrals for speaking out of turn, inappropriate comments and talking back to teachers." Appellant's Appendix Volume 2 at 9. On March 5, 2019, the court held a fact-finding hearing at which the State presented the testimony of L.B., K.R., C.R., and C.G.

[4] On April 4, 2019, juvenile probation filed a predispositional report. With respect to education, the report states: "Youth is currently in the 7th grade at Greencastle Middle School. He currently has an IEP. Youth was expelled from school due to this incident, however his [sic] currently receiving homebound services because he has an IEP. He meets with Mrs. [W.] every Monday and Friday." Id. at 36. With respect to mental health, the report states: "Youth participated in counseling and wraparound services at Cummins in the past. Youth was [sic] completed all services and was discharged successfully. Youth has been diagnosed with PDD, NOS, ADHD and ODD."[2] Id. The report indicates that prior services included special education services, IEP, individual counseling, and wraparound services. The report states that X.D.'s overall risk assessment score places him in the low risk to reoffend

---

[1] In his brief, X.D. notes that an IEP is an Individualized Education Program for children with difficulty learning and functioning.

[2] In his brief, X.D. states that PDD-NOS stands for Pervasive Developmental Disorder—Not Otherwise Specified and "was one of several previously separate subtypes of autism that were folded into the single diagnosis of autism spectrum disorder (ASD) with the publication of the DSM-5 diagnostic manual in 2013," that ADHD stands for Attention Deficit Hyperactive Disorder, and that ODD stands for Oppositional Defiant Disorder. Appellant's Brief at 5 n.2.

category. The probation officer's recommendation was that X.D. be placed on probation for six months, have no contact with anyone on probation or the victims, maintain a 6:00 p.m. curfew, continue to participate in homebound services and complete all assignments and next school year attend school every day with no tardies or discipline referrals, enroll in counseling and sign all necessary releases to allow juvenile probation to speak with the therapist, obey all laws and parents at all times, refrain from using illegal drugs, alcohol, or tobacco products, cooperate with juvenile probation, and complete sixteen hours of community service.

[5] On April 9, 2019, the court held a dispositional hearing. At the start of the hearing, the court asked X.D.'s counsel if he or his client had any corrections or modifications to the pre-dispositional report, and counsel replied "No, Your Honor." Transcript Volume 2 at 32. The prosecutor indicated the State agreed with the recommendations in the predispositional report. The court asked X.D.'s counsel if he had "gone over the recommendations with the parents and/or child," and he replied affirmatively. *Id*. at 32-33. The court asked X.D.'s counsel "[d]o you have any suggestions other than what [probation] is suggesting to the Court," and he stated that his client would like to have appellate counsel appointed. *Id*. at 33. The court asked X.D.'s parents about their employment, parenting time, and child support. The court asked X.D. if there was anything he wanted to say, and he replied "No, sir." *Id*. at 36. The court stated:

Okay. So I will go along with most of the probation's recommendations. None of the parties have anything else to say?

You'll be on probation for six months. You can't have any contact with anybody on probation or the folks that were known as the victims in this case, and their names are [L.B.] and [K.R.]. . . . You also need to continue with your homebound services and complete your assignments. And then next year, you're going to be back in regular school it sounds like, right, next fall? . . .

And you're also going to continue with your counseling that you've enrolled in. Or if you haven't, you need to. And probation will have to have a release, Mom, signed so that she can speak with the therapist about the progress that your child is making and/or yourself. Of course, [X.D.], you have to obey all laws. You have to obey your parents. And of course, you can't use any illegal drugs, alcohol, or tobacco, cooperate with the Probation Department, and complete 16 hours of community service. Do you understand all that? . . .

And then we're also going to do the community service. We'll do it at no less than four hours per month, so at least you're doing some every month, so you don't get to the end of the probation period and all of a sudden you don't have enough time, you think.

*Id*. at 36-37.

[6] On April 9, 2019, the court entered an Order of Disposition and Terms of Probation containing special terms and conditions including that X.D. be on formal probation for six months; have no contact with anyone on probation or L.B. or K.R.; maintain a 6:00 p.m. curfew; continue to participate in homebound services and complete all assignments and, the next school year, attend school every day with no tardies or discipline referrals; enroll in counseling and sign all necessary releases to allow juvenile probation to speak with the therapist; obey all laws; obey his parents at all times; refrain from using

illegal drugs, alcohol, or tobacco products; cooperate with juvenile probation; and complete sixteen hours of community service at no less than four hours per month.

## *Discussion*

### I.

X.D. first claims the evidence is insufficient to support his adjudication. When the State seeks to have a juvenile adjudicated to be a delinquent for committing an act which would be a crime if committed by an adult, the State must prove every element of the crime beyond a reasonable doubt. *J.R.T. v. State*, 783 N.E.2d 300, 302 (Ind. Ct. App. 2003), *trans. denied*. Upon review of a juvenile adjudication, this Court will consider only the evidence and reasonable inferences supporting the judgment. *Id*. We will neither reweigh the evidence nor judge witness credibility. *Id*. If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the adjudication. *Id*.

The offense of intimidation is governed by Ind. Code § 35-45-2-1 which at the time of the offense provided in part that a person who communicates a threat to another person with the intent that the other person be placed in fear of retaliation for a prior lawful act commits intimidation as a class A misdemeanor. The statute also provided that a threat is "an expression, by words or action, of an intention to . . . unlawfully injure the person threatened or another person, or damage property."

[9] X.D. asserts the State did not prove that he had the intent required by the statute. Specifically, he argues that he is "a thirteen-year-old boy with an IEP who is on the autism spectrum, who is being prosecuted for words he spoke in anger in response to being teased because he is slow" and that, "[d]ue to the context of [his] youth and difficulties, the State failed to prove that X.D. intended to place the other children in fear of retaliation." Appellant's Brief at 11. He asserts no evidence was produced as to the extent of his disability or understanding and that, without such, there is not proof beyond a reasonable doubt that he intended to place the other children in fear.

[10] The State responds that L.B., K.R., C.R., and C.G. each testified that X.D. threatened to bring a gun to school and shoot L.B. and K.R. It argues that it proved that X.D. made his threat in retaliation for a prior lawful act, the court was free to conclude that X.D.'s threat was in direct response to being told to leave, and a reasonable person, especially a child, would justifiably be placed in fear when threatened with being shot. It further argues that having an IEP is not a defense to intimidation and does not negate X.D.'s ability to form the requisite *mens rea*, there was no evidence to suggest that X.D. suffered from a mental illness that would preclude him from forming the necessary *mens rea*, the fact that X.D. is autistic does not mean that he cannot intend to place another person in fear, and X.D.'s argument is an invitation to reweigh the evidence.

[11] The Indiana Supreme Court has noted that intent is a mental function and, as such, intent can rarely be proved by direct evidence. *Phipps v. State*, 90 N.E.3d 1190, 1195 (Ind. 2018). It is well-established that intent can be proved by

circumstantial evidence. *Id.* For example, intent can be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points. *Id.* at 1195-1196. *See also Chastain v. State*, 58 N.E.3d 235, 240 (Ind. Ct. App. 2016) (observing that intent may be inferred from the facts and circumstances of each case), *trans. denied*; *Sandleben v. State*, 22 N.E.3d 782, 791 (Ind. Ct. App. 2014) ("The fact finder is entitled to infer intent from the surrounding circumstances.") (citation omitted), *trans. denied*.

[12] The record reveals that the State presented the testimony of L.B., K.R., C.R., and C.G. At some point, L.B. told X.D. to be quiet or to shut up and to leave him alone. L.B. testified that X.D. then told him and K.R. "[d]on't be surprised if you get shot." Transcript Volume 2 at 15. K.R. testified that X.D. threatened him and L.B. and said "[d]on't be surprised if you're the only two shot." *Id.* at 18. C.R. testified that he heard X.D. talk to L.B. and K.R. and say "I'm going to bring a gun to school and I'm going to shoot you, both of you two." *Id.* at 21. C.G. testified that, after L.B. told X.D. "to be quiet and go away and leave him alone," X.D. "threatened to bring a gun and shoot" L.B. and K.R. *Id.* at 24. X.D. did not claim at the fact-finding hearing that he did not intend or could not have intended to place L.B. and K.R. in fear because he "currently ha[d] an IEP," *see* Appellant's Appendix Volume 2 at 9, as stated in the filed preliminary inquiry report, or due to the fact that he "has been diagnosed with PDD, NOS, ADHD and ODD," as stated in the subsequently-filed dispositional report. *Id.* at 36. The juvenile court was able to reasonably infer from the facts and circumstances as presented that X.D., in

communicating a threat by words to L.B. and K.R., intended to place them in fear. Based upon the record, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could find that X.D. committed acts which would constitute intimidation as class A misdemeanors if committed by an adult.

## II.

X.D. next argues that the juvenile court did not enter findings as required by Ind. Code § 31-37-18-9. He argues that "the juvenile court's order makes no effort to explain why X.D. deserved, or would benefit from probation" and that the order "goes into the required terms of probation, with no explanation of why they were necessary or relevant to X.D. and his conduct." Appellant's Brief at 16. The State responds that the juvenile court verbally adopted the recommendations from the predispositional report without objection.

Ind. Code § 31-37-18-9 provides in part:

(a) The juvenile court *shall* accompany the court's dispositional decree with written findings and conclusions upon the record concerning approval, modification, or rejection of the dispositional recommendations submitted in the predispositional report, including the following specific findings:

(1) The needs of the child for care, treatment, rehabilitation, or placement.

(2) The need for participation by the parent, guardian, or custodian in the plan of care for the child.

> (3) Efforts made, if the child is removed from the child's parent, guardian, or custodian, to:
>
>  (A) prevent the child's removal from; or
>
>  (B) reunite the child with;
>
>  the child's parent, guardian, or custodian.
>
> (4) Family services that were offered and provided to:
>
>  (A) the child; or
>
>  (B) the child's parent, guardian, or custodian.
>
> (5) The court's reasons for the disposition.
>
> (6) Whether the child is a dual status child under IC 31-41.
>
>  * * * * *
>
> (c) The juvenile court may incorporate a finding or conclusion from a predispositional report as a written finding or conclusion upon the record in the court's dispositional decree.

(Emphasis added). Here, the juvenile court's dispositional order merely placed X.D. on formal probation for six months and set forth the terms and conditions of his probation. The order does not include findings and conclusions concerning approval of the dispositional recommendations submitted in the predispositional report or the specific findings required by Ind. Code § 31-37-18-9 including the needs of X.D. for care, treatment, rehabilitation, or placement, the need for participation by the parents in the plan of care, family services that were offered and provided to X.D. or his parents, and the court's reasons for the disposition. While the dispositional order included the probationary terms recommended in the predispositional report, the dispositional order did not

incorporate any finding or conclusion from the predispositional report. We remand for an amended dispositional order which includes the written findings and conclusions required by the statute.

[15] For the foregoing reasons, we affirm X.D.'s adjudication and remand for an amended dispositional order.

[16] Affirmed and remanded.

Altice, J., and Tavitas, J., concur.